## NATIONAL FEDERATION OF REPUBLICAN ASSEMBLIES, et al., Plaintiffs,

v.

## UNITED STATES of America, et al., Defendants.

### No. CIV.A. 00–0759–RV–C.

United States District Court,
S.D. Alabama,
Southern Division.

May 31, 2001.

James C. Johnston, Mobile, AL, James W. Zeigler, Mobile, AL, David B. Rivkin, Jr., pro hac vice, Frederick W. Chockley, pro hac vice, Lee A. Casey, pro hac vice, E. Mark Braden, pro hac vice, Baker & Hostetler LLP, Washington, DC, J. Michael Druhan, Jr., Johnston & Druhan, LLP, Mobile, AL, for plaintiffs.

Christopher M. Pietruszkiewicz, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, Robert L. Welsh, U.S. Dept. of Justice, Washington, DC, for U.S.

### ORDER

VOLLMER, Senior District Judge.

Presently before the court is the defendant United States of America's "Motion to Dismiss" (Doc. 15), as well as the plaintiffs' "Opposition to Defendants' Motion to Dismiss" (Doc. 19), and the "Reply of United States of America to Plaintiffs' Opposition to Defendants' Motion to Dismiss" (Doc. 23).

For the reasons put forth below, the government's motion is due to be granted in part and denied in part.

### I. BACKGROUND

This is an action by the plaintiffs [1] seeking a declaratory judgment finding that the recently enacted Public Law 106–230, codified at 26 U.S.C. §§ 527(i), (j), is unconstitutional because it violates the First and Tenth Amendments, as well as the Equal Protection clause of the Fifth Amendment. The plaintiffs also seek a preliminary and permanent injunction against the enforcement of the requirements of 26 U.S.C. §§ 527(i), (j).

Public Law 106–230 went into effect on July 1, 2000, after being introduced as

---

1. The plaintiffs consist of the following organizations and individuals: The National Federation of Republican Assemblies ("NFRA"), the Alabama Republican Assembly ("ARA"), the Mobile Republican Assembly ("MRA"), Citizens For Reform ("CFR"), The Howard Jarvis Taxpayers Association ("HJTA"), The Howard Jarvis Taxpayers Association Political Action Committee ("HJTAPAC"), The Libertarian National Committee, Inc. ("LNC"), The Libertarian Party of Indiana ("LPI"), The Horning 2000 Campaign Committee ("HCC"), and Freeman E. Jockisch, Mobile County Commissioner ("Jockisch"), and Paul Haughton ("Haughton"), an individual.

H.R. 4726. This law amended section 527 of the Internal Revenue Code ("I.R.C.") by adding two new subsections that require political organizations seeking to claim section 527 tax exempt status to file notification of their status and make certain disclosures of their expenditures and contributions. Stated generally, subsection (i) imposes registration requirements upon such organizations, and subsection (j) imposes disclosure requirements upon organizations, including a "penalty" for their failure to make such disclosures.

More specifically, subsection (i) requires a political organization to notify the I.R.S. of its desire to be treated as a 527 organization for income tax purposes and to provide basic information, including its name, address, purpose, and the identity of a contact person, custodian of records, officers, highly compensated employees, directors, and related entities. Failure to register results in that organization's political contributions being treated as taxable income until the requisite notice is given.

Subsection (j) requires a political organization to file at least two reports a year (more during election years), disclosing the identity of its major contributors (those who donated more than $200) and its major recipients of expenditures (more than $500). The timing and main elements of the disclosures are similar to those imposed by the Federal Election Campaign Act ("FECA"), 2 U.S.C. § 431 *et seq.* "[A] failure to make the required disclosures" results in the imposition of a "penalty" to be paid by the organization, of "an amount equal to the rate of tax specified in subsection (b)(1) [35%] multiplied by the amount to which the failure relates." 26 U.S.C. § 527(j)(1)(B).

I.R.C. § 527 establishes a "political organization" as a category of taxpayer.

Section 527(e)(1) defines "political organization" as:

a party, committee, association, fund, or other organization (whether or not incorporated) organized and operated primarily for the purpose of directly or indirectly accepting contributions or making expenditures, or both, for an exempt function.

Section 527 then defines "exempt function" as:

the function of influencing or attempting to influence the selection, nomination, election, or appointment of any individual to any Federal, State, or local public office or office in a political organization, or the election of Presidential or Vice-Presidential electors, whether or not such individual or electors are selected, nominated, elected, or appointed. Such term includes the making of expenditures relating to an office described in the preceding sentence which, if incurred by the individual, would be allowable as a deduction under section 162(a).

26 U.S.C. § 527(e)(2). Such qualified political organizations are not required to pay income tax on contributions received for the purpose of furthering the organization's exempt function.

## II. MOTION TO DISMISS STANDARDS

The government has filed its motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6).[2] Under Rule 12(b)(6), a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts which could be proven to be consistent with the allegations contained in the pleading. *See Mesocap Indus. Ltd. v. Torm Lines,* 194 F.3d 1342, 1343 (11th Cir.1999). The court must ac-

---

**2.** The government has also moved to have the individual defendants dismissed for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). As it is of little practical significance at present, the court declines to address the merits of this issue at present.

cept as true all well-pleaded factual allegations and view them in the light most favorable to the nonmoving party. *See Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1273, n. 1 (11th Cir.1999).

In contrast, Rule 12(b)(1) motions come in two different forms—facial attacks and factual attacks. *See, e.g., Eaton v. Dorchester Development, Inc.,* 692 F.2d 727, 731–33 (11th Cir.1982). Facial attacks require the court to determine whether the plaintiff has sufficiently alleged a basis for jurisdiction on the face of the complaint, and similar to Rule 12(b)(6) rulings, the factual allegations in the complaint are taken as true for the purposes of the motion. *See Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir.1990). Factual attacks challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* In factual attacks, the presumption of truth of Rule 12(b)(6) does not attach, and the court is free to weigh the evidence and "evaluat[e] for itself the merits of jurisdictional claims." *Id.* (citation omitted). Since the matter at issue here is the court's "very power to hear the case," the attack is factual. *See id.* (citing and quoting *Mortensen v. First Fed. Sav. and Loan Assoc.,* 549 F.2d 884, 891(3d Cir.1977)). Under a 12(b)(1) factu-

al attack, the plaintiff has the burden of proving that jurisdiction does in fact exist. *Menchaca v. Chrysler ·Credit Corp.,* 613 F.2d 507, 511 (5th Cir.1980).[3]

## III. DISCUSSION

### a. *Anti–Injunction Act*

■ The government asserts that this court lacks jurisdiction because the action is barred by the Anti–Injunction Act ("AIA"), 26 U.S.C. § 7421.[4] That statute provides that:

> Except as provided in [specific code sections irrelevant here], no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

26 U.S.C. § 7421(a). The AIA "withdraw[s] jurisdiction from the state and federal courts to entertain suits seeking injunctions prohibiting the collection of federal taxes." *Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 5, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962). "The manifest purpose of § 7421(a) is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund." *Id.* at 6, 82 S.Ct. 1125.

---

**3.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981 *en banc* ), the Eleventh Circuit adopted as binding precedent all decisions issued by the former Fifth Circuit prior to October 1, 1981.

**4.** Additionally, the government contends that the "tax exception" to the Declaratory Judgment Act ("DJA") contained in 28 U.S.C. § 2201 would also bar the plaintiffs' action for declaratory relief. In comparing the scope and reach of the two acts, the Supreme Court acknowledged that most lower courts have held that the two acts have "coterminous application," and the Supreme Court itself only concluded that "the federal tax

exception to the Declaratory Judgment Act is at least as broad as the Anti–Injunction Act." *Bob Jones University v. Simon,* 416 U.S. 725, 732, n. 7, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974). Because neither party has contended that either act would have an inconsistent application in this case, the court declines to conduct such analysis *sua sponte* for the purposes of the present motion. Therefore, since the AIA and DJA operate coterminously, the following analysis of the impact of the AIA will also apply to the effect of the DJA. *See, e.g., Investment Annuity, Inc. v. Blumenthal,* 609 F.2d 1, 4 (D.C.Cir.1979), cert. denied, 446 U.S. 981, 100 S.Ct. 2961, 64 L.Ed.2d 837 (1980).

That said, the AIA is not without exceptions. In addition to the statutory exceptions to the AIA (which are not applicable here), the Supreme Court has crafted limited judicial exceptions. The first of those was put forth in *Williams Packing*, 370 U.S. at 8, 82 S.Ct. 1125, which requires that the taxpayer show both that (1) under the most liberal view of the law and the facts, it is clear that the government cannot ultimately prevail under any circumstances, and (2) that equitable jurisdiction otherwise exists (that there is no adequate remedy at law). *Id.* at 393, 104 S.Ct. 1107. Several years later, the Supreme Court recognized another equitable exception to the AIA in *South Carolina v. Regan*, 465 U.S. 367, 372–73, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1984), for situations in which the plaintiff has no alternative legal means to challenge the validity of the tax.

Neither party disputes that this is a suit for the purpose of restraining the assessment or collection of the exactions imposed under subsections (i) and (j). However, the plaintiffs argue, *inter alia*, that the Anti–Injunction Act does not bar their claims because the exactions in question are a "penalty" rather than a tax. Thus, whether the Anti–Injunction Act applies (and therefore prohibits this suit) depends on whether the payments under subsections (i) and (j) are "taxes."

██ The Anti–Injunction Act applies only when a "tax" is at issue; it does not apply when the exaction is a "penalty." *See Lipke v. Lederer*, 259 U.S. 557, 562, 42 S.Ct. 549, 66 L.Ed. 1061 (1922)("The collector demanded payment of a penalty, and [the Anti–Injunction Act], which prohibits suits to restrain assessment or collection of any tax, is without application."); *see also* 14 JACOB MERTENS, LAW OF FED. INCOME TAXATION § 49E:50 (1999) ("[P]enalties are not deemed to be taxes for purposes of Section 7421 ... Penalties

are treated as an exception to the rule that an individual may not bring a suit for the purposes of restraining the collection of a tax.").

██ "[A] penalty, as the word is here used, is an exaction imposed by statute as punishment for an unlawful act." *United States v. LaFranca*, 282 U.S. 568, 572, 51 S.Ct. 278, 75 L.Ed. 551 (1931); *accord Lipke*, 259 U.S. at 562, 42 S.Ct. 549 (the "definite function of a penalty" is "punishment for infraction of the law"). A tax, on the other hand, usually "is an enforced contribution to provide for the support of government." *La Franca*, 282 U.S. at 572, 51 S.Ct. 278; *see also Montana Department of Revenue v. Kurth Ranch*, 511 U.S. 767, 779–80, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994) ("taxes ... are usually motivated by revenue-raising ... purposes"). Both taxes and penalties typically have some regulatory effect, intended or not. *Id.* Whether an exaction is a tax or a penalty depends on its "very nature," and not simply on what it is called. *Lipke*, 259 U.S. at 561–62, 42 S.Ct. 549; *accord, La Franca*, 282 U.S. at 572, 51 S.Ct. 278.

██ The first step in construing a statute is to interpret the statutory language in accordance with its plain meaning. *United States v. Yeatts*, 639 F.2d 1186, 1189 (5th Cir.1981). The heading of subsection (j) is entitled "Penalty for failure" [to make required disclosures] (emphasis added). While section headings cannot be used to limit the plain meaning of the text, they may be used where the text itself is ambiguous. *Wilhelm Pudenz GmbH v. Littlefuse, Inc.*, 177 F.3d 1204, 1211 (11th Cir.1999).

Furthermore, in Revenue Ruling 2000–49, the I.R.S. itself labels the exaction under subsection (j) as a "penalty." Rev. Rul.2000–49, 2000–44 I.R.B. 430. While "[a] revenue ruling does not have the effect of a regulation or a statute[,][i]t is entitled to weight ... because it expresses

the studied view of the agency whose duty it is to carry out the statute." *Anselmo v. Commissioner*, 757 F.2d 1208, 1213, n. 5 (11th Cir.1985). The instructions for Form 8872, the applicable tax form for subsection (j), also state that "[a] penalty will be imposed," and that "[t]he penalty is 35% of the total amount of contributions and expenditures to which a failure relates." (emphasis added).

Furthermore, Form 1120–POL, which is the income tax return form for § 527 organizations, does not reference the exactions under subsection (j) at all. The instructions to Form 1120–POL include a section on "taxable income," and it discusses Form 8871, the corresponding form to subsection (i), but it makes no mention of Form 8872. If the I.R.S. considered the exaction under subsection (j) to be a "tax," it seems likely that the tax return form for § 527 organizations probably would address it in some manner.

In fact, the exaction under subsection (j) is not constructed in terms of tax or taxable income in any way. It imposes an exaction of an amount "equal to the rate specified in subsection (b)(1)." Thus, § 527(j) directs that a political organization must pay "an amount" rather than a "tax." That is, it states that the amount to be paid is "equal to" the one that is calculated under subsection(b)(1), not that the amount "is" the tax computation itself. In fact, subsection (j) makes no reference to any tax being owed or the 35% exaction having any effect on a political organization's taxable income.

Other I.R.C. provisions that explicitly impose "penalties" of unfixed amounts employ similar "equal to" language. *See, e.g.,*

26 U.S.C. §§ 6672, 6675, 6677, 6683. It is "[t]he normal rule of statutory construction [to] assume[ ] that 'identical words used in different parts of the same act are intended to have the same meaning.'" *Helvering v. Stockholms Enskilda Bank,* 293 U.S. 84, 87, 55 S.Ct. 50, 79 L.Ed. 211 (1934) (quoting *Atlantic Cleaners & Dyers, Inc. v. United States,* 286 U.S. 427, 433, 52 S.Ct. 607, 76 L.Ed. 1204 (1932)). Therefore, because Congress used the same language for subsection (j) as it did in the aforementioned I.R.C. penalty provisions, it is likely that it was intended to be treated similarly.[5]

In contrast, subsection (i) provides that, in the event of a failure to file a notice requesting to be treated as a Section 527 organization, "the taxable income of such organization shall be computed by taking into account [exempt income and related deductions]." In other words, it is clear that subsection (i) alters an organization's taxable income, while subsection (j) does not. That the same Congress used very different language in subsection (j) reflects that subsection (j) does not alter a corporation's taxable income, but instead imposes a penalty. The mere fact that the penalty is calculated by reference to a tax table does not automatically convert it into a tax, because it does not alter the "very nature" of the exaction. *See Lipke,* 259 U.S. at 561, 42 S.Ct. 549.

It is not altogether surprising that subsection (j) is not discussed with regard to a political organization's taxable income, because the required disclosures do not further any actual tax purpose and are instead utilized for campaign finance regulation.[6] For example, the disclosure of a

---

**5.** As discussed further below, those I.R.C. "penalties" are explicitly deemed to be treated as "taxes" for purposes of assessment and collection by 26 U.S.C. § 6671. That Congress felt it necessary to do so demonstrates that it viewed penalties differently from taxes,

yet there is no comparable language anywhere in the I.R.C. directing the penalty provision contained in subsection (j) to be treated as a tax.

**6.** The court acknowledges that taxes may be used to regulate and even deter certain activi-

political organization's total contributions and expenditures would be relevant in determining whether the organization met the requirements for § 527 status. In other words, one could determine if an organization was operating "primarily" to engage in "exempt function" activity, by analyzing its total contributions and expenditures. However, § 527(j)(3)(A) and (B) limit the disclosure requirements to expenditures and contributions over a minimum threshold amount ($500 and $200 respectively), making it impossible to calculate these totals. Furthermore, the information pertaining to contributors that the "penalty" seeks to compel has no conceivable tax purpose, as the contributors neither receive a deduction or exemption nor are taxed for their political contributions, and are required to do nothing under § 527. Therefore, the information that is required by subsection (j) does not assist the I.R.S. in performing any tax oversight functions, and therefore by nature is a penalty and not a tax.

The court has examined other penalty provisions in the I.R.C. and, more specifically, how they have been treated with respect to the Anti–Injunction Act. Section 6671(a) of the I.R.C. specifically addresses how certain I.R.C. penalties shall be treated. It states:

> (a) Penalty assessed as tax.—The penalties and liabilities provided **by this subchapter** shall be paid upon notice and demand by the Secretary, and shall be assessed and collected in the same manner as taxes. Except as otherwise provided, any reference **in this title** to

"tax" imposed by this title shall be deemed also to refer to the penalties and liabilities provided **by this subchapter.**
26 U.S.C. § 6671(a). (emphasis added). Congress would not have felt it necessary to create a section which mandates that certain I.R.C. penalties to be treated as taxes, if they were already considered as such. Furthermore, the language of this section specifically limits the scope of that treatment to "penalties and liabilities provided by **this subchapter** [subchapter B] (emphasis added)" *Id.* "When Congress provides exceptions in a statute, it does not follow that courts have authority to create others. The proper inference, and the one we adopt here, is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth." *United States v. Johnson,* 529 U.S. 53, 58, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000). Therefore, under the principal of *inclusio unius est exclusio alterius,*[7] one can infer that penalties from the rest of the I.R.C. should be treated differently than taxes, or else Congress would not have limited § 6671(a) in that manner. *See, e.g., The Raleigh & Gaston Railroad Co. v. Reid,* 13 Wall. 269, 80 U.S. 269, 269, 20 L.Ed. 570 (1871); *United States v. Koonce,* 991 F.2d 693, 698 (11th Cir.1993). Furthermore, "[a] statute should be construed so that effect is given to all its provisions, so that no part of it will be inoperative or superfluous, void or insignificant." *Gonzalez v. McNary,* 980 F.2d 1418, 1420 (11th Cir. 1993). If courts were to treat "penalties" found in the other portions of the I.R.C. as

---

ties. *See Sonzinsky v. United States,* 300 U.S. 506, 513, 57 S.Ct. 554, 81 L.Ed. 772 (1937); *United States v. Kahriger,* 345 U.S. 22, 28, 73 S.Ct. 510, 97 L.Ed. 754 (1953). Therefore, the court is not questioning the overall validity of the exaction under Congress's taxing power, but is analyzing its purpose only in order to determine whether it is by nature a penalty or tax.

7. "The inclusion of one is the exclusion of another." BLACK'S LAW DICTIONARY 763 (6th ed. 1990) ("This doctrine decrees that where law expressly describes particular situation to which it shall apply, an irrefutable inference must be drawn that what is omitted or excluded was intended to be omitted or excluded.")

"taxes," section 6671(a) would be rendered superfluous.

Various other courts have dealt with the penalty/tax question with regard to the applicability of the Anti–Injunction Act, and most have relied upon the language of Section 6671(a).[8] *See, e.g., Warren v. United States,* 874 F.2d 280, 282 (5th Cir. 1989); *Souther v. Mihlbachler,* 701 F.2d 131, 132 (10th Cir.1983) (citing § 6671(a), the court stated that "the penalties imposed pursuant to § 6682 are 'taxes' under § 7421".); *Botta v. Scanlon,* 314 F.2d 392, 393 (2d Cir.1963) (finding that a penalty imposed under § 6672 was a "tax" for Anti–Injunction Act purposes because of the exception provided for in § 6671(a)); *First Atlas Funding Corp. v. United States,* 23 Cl.Ct. 137, 140 (1991) ("Congress appears to wish that, for purposes of assessment collection, penalties under chapter 68 are to be treated like taxes."); *Crouch v. Commissioner of Internal Revenue,* 447 F.Supp. 385, 386 (N.D.Cal.1978) ("The clear Congressional intent evidenced in § 6671 appears to be to treat all penalties imposed by Subchapter B in the same manner as taxes insofar as their assessment and collection is concerned."); *O'Brien v. Evans,* 560 F.Supp. 228, 228 (D.Or.1983) ("The Congressional intent evidenced in section 6671 appears to be to treat all penalties imposed by Subchapter B in the same manner as taxes insofar as concerns their assessment and collection").

Other courts, relying upon similar exceptions enumerated in sections of the code that no longer exist, have found that certain penalties are to be considered taxes for injunctive purposes. *See, e.g., Shaw v. United States,* 331 F.2d 493 (9th Cir.1964)(relying upon 26 U.S.C. § 6659(a), which stated that "penalties .assessed under Chapter 68 (sections 6651 to 6674) shall be paid in the same manner as taxes,

and that any reference in the Code to 'tax' shall be deemed to refer also to additions and penalties set forth in this chapter."); *Reams v. Vrooman–Fehn Printing Co.,* 140 F.2d 237, 240 (6th Cir.1944) (relying upon Section 2707(a) of the 1939 Internal Revenue Code, which provided that certain penalties were "to be assessed and collected in the same manner as taxes are assessed and collected.").

In its motion to dismiss and its reply, the government argues that the requirements of § 527(j) is optional, and therefore, political organizations have a choice of whether or not to make the disclosures required by subsection (j). However, this optional nature is something that is not reflected anywhere in the text of Section 527. "In the absence of an indication to the contrary, words in a statute are assumed to bear their 'ordinary, contemporary, common meaning.'" *Walters v. Metropolitan Educational Enterprises,* 519 U.S. 202, 207, 117 S.Ct. 660, 136 L.Ed.2d 644 (1997). Subsection (j) speaks only in terms of **"required** disclosures," and states that organizations **"shall** file" with the Secretary such disclosures, and describes the penalty which results from the **"failure"** to do so (emphasis added). The Supreme Court has explained that a statute's use of the mandatory term "shall" normally creates obligation impervious to judicial discretion. *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,* 523 U.S. 26, 35, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998); *Escoe v. Zerbst,* 295 U.S. 490, 493, 55 S.Ct. 818, 79 L.Ed. 1566 (1935) (holding that a statute's use of word "shall," though not controlling, is significant as indicating intent that statute should be mandatory.).

Similar mandatory language is also used throughout the Revenue Ruling which was issued by the I.R.S. on October

---

**8.** In fact, neither party nor the court has been able to find any legal precedent that has addressed this penalty/tax issue in a similar context.

12, 2000,[9] as well as in the instructions for the corresponding forms (8871, 8872, 1120–POL) which § 527 section organizations are required to submit. Since the I.R.S. is the agency that is responsible for carrying out the Internal Revenue Code, its rulings should be given weight by reviewing courts. *See Anselmo*, 757 F.2d at 1213, n. 5. Neither the text of the statute nor its accompanying documents mention section 527 as being optional in any respect. In fact, the I.R.S.'s September 15, 2000 Field Service Advisory specifically states that "Section 527 is not an elective provision. Neither the statute nor the regulations provide for an organization either to elect into or elect out of § 527." I.R.S. FSA 200037040, available at 2000 WL 33120171. The mere fact that it is possible for an organization to choose to violate the requirements of the statute and pay the resulting penalty does not render those requirements optional. Under this approach, one could argue that most traffic laws are optional, because they can be disregarded with the "option" of paying any ensuing penalties.

Additionally, the government has not adequately explained why the I.R.C. penalty provision contained in 26 U.S.C. § 7203 would not apply to "violations" of § 527. That section states:

Section 7203. Willful failure to file return, supply information, or pay tax

Any person required under this title to pay any estimated tax or tax, **or required by this title or by regulations made under authority thereof to make a return, keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information,** at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $25,000 ($100,000 in the case of a corporation), or imprisoned not more than 1 year, or both, together with the costs of prosecution. In the case of any person with respect to whom there is a failure to pay any estimated tax, this section shall not apply to such person with respect to such failure if there is no addition to tax under section 6654 or 6655 with respect to such failure. In the case of a willful violation of any provision of section 6050I, the first sentence of this section shall be applied by substituting "felony" for "misdemeanor" and "5 years" for "1 year" (emphasis added).

On its face, this section appears to apply to organizations which fail to comply with the disclosure requirements of § 527(j). The government merely contends that since subsections (j) of § 527 is optional, section 7203 does not apply.[10] However, as stated earlier, nothing in section 527 indicates that its requirements are optional. Furthermore, the language of § 7203 clearly indicates that it applies to "this title," which encompasses the entire I.R.C. Thus, in the absence of any language in § 527 to the contrary, the penalty provision of § 7203 would apply. The court is mindful that Congress is presumed to know the current law of the area in which they are

9. Specifically, mandatory phrases such as "must file," "must provide," "must include," "are required," "requires that," and "requirement," are used throughout the ruling. *See* Rev. Rul.2000–49, 2000–44 I.R.B. 430.

10. In fact, in its reply brief, the government argues that "Section 7203 applies only when a person *required* to pay a tax, make a return, or supply information, fails to do so." Curiously, the government appears to argue that the word "required" means something that is mandatory when used in § 7203 and something that is optional when used in § 527.

legislating. *See, e.g., Cannon v. University of Chicago,* 441 U.S. 677, 696–98, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979); *United States v. Jordan,* 915 F.2d 622, 628 (11th Cir.1990). Therefore, had Congress not intended § 7203 to not apply to § 527, it could easily have provided language in § 527 which would have accomplished such end.

Therefore, the court concludes that subsection (j) imposes a penalty rather than a tax, and thus is not subject to the Anti–Injunction Act contained in I.R.C. § 7421. However, the court also concludes that subsection (i) is a "tax" because, as mentioned above, it confers a taxable status upon section 527 organizations. *See Bob Jones University v. Simon,* 416 U.S. 725, 732, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974) (holding that an I.R.S. ruling that revokes an organization's 501(c)(3) status falls within the scope of the Act); *see also Alexander v. "Americans United" Inc.,* 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974). Subsequently, the Anti–Injunction Act applies to subsection (i). Since the organizational plaintiffs do not meet the highly elevated requirements of the *Williams Packing* exception, they are barred from seeking injunctive or declaratory relief with respect to subsection (i).

■ While this court concluded that this suit is not barred by the AIA as to subsection (j) because the exaction imposed under that subsection is a penalty rather than a tax, the practical significance of that determination is actually minimal, because at least one plaintiff meets the requirements of the equitable exception of *South Carolina v. Regan,* 465 U.S. 367, 378–80, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1984) (holding that "Congress did not intend the Act to apply to actions brought by aggrieved parties for whom it has not provided an alternative remedy."). Specifically, plaintiff Haughton, as a contributor to § 527 organizations, incurs no tax liabilities at all for his political contributions. Therefore, he has no alternative legal means to challenge the validity of either the disclosure requirements or the penalty imposed by § 527. *See id.* He does not have a "pay and sue" option and cannot challenge a deficiency assessment in Tax Court. *See id.* Additionally, as explained further below, plaintiff Haughton has standing to challenge subsection (j).

### b. *Standing*

■ The government claims that the "individual plaintiffs," Haughton and Jockisch, lack the necessary standing to challenge Section 527.[11] Haughton essentially claims that the disclosure requirements contained in section 527(j) would cause him to be disinclined to contribute money to controversial or unpopular political organizations or candidates. In fact, he claims that in certain cases, the disclosure of his support for various causes would result in harm to his reputation and his political endeavors.[12] The government argues that

11. The government also has suggested that Jockisch's action may be moot, as the election in question is over. However, it appears that Jockisch satisfies the "capable of repetition, yet evading review" exception to mootness. In order to meet this exception, "the Supreme Court has required that (1) there be a reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party, and (2) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration." *Sierra Club v. Martin,* 110 F.3d 1551, 1554 (11th Cir.1997) (citing *Murphy v. Hunt,* 455 U.S. 478, 482–83, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982)). Jockisch has indicated his desire to run for public office in future elections, so it is likely that the same controversy would reoccur.

12. The court notes that Haughton has not put forth any claims against subsection (i), although neither party has clearly drawn a distinction between (i) and (j). Haughton's claims are made exclusively in his capacity as a contributor to political organizations and he

Haughton lacks standing to challenge the validity of section 527 because of its "optional" nature. Therefore, the government suggests that Haughton could preserve his anonymity by either limiting his contributions to amounts under $200 or condition his contributions on the organization's promise not to disclose his identity or personal information (which would essentially result in a loss of 35% of that contribution).

The "irreducible constitutional minimum" of standing contains three elements: (1) "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, ... and (b) 'actual or imminent', not 'conjectural' or 'hypothetical'"; (2) "there must be a causal connection between the injury and the conduct complained of", such that "the injury [is] 'fairly ... trace[able] to the challenged action of the defendant'"; and (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)(quoting earlier Supreme Court decisions); *see also Saladin v. City of Milledgeville*, 812 F.2d 687, 690 (11th Cir.1987). "As the parties invoking federal jurisdiction, [plaintiffs] bear the burden of showing standing by establishing, *inter alia*, that they have suffered an injury in fact." *Lujan*, 504 U.S. at 555, 112 S.Ct. 2130.

Haughton has expressed his desire to contribute to political organizations, an activity that constitutes "core political speech." *See McIntyre v. Ohio Elections Commission*, 514 U.S. 334, 347, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995); *Buckley v. Valeo*, 424 U.S. 1, 14, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). Although § 527(j) does not directly limit or restrict Haughton's speech, it has a chilling effect on his First Amendment rights, because the First Amendment "protects political association as well as political expression." *Buckley*, 424 U.S. at 14, 96 S.Ct. 612. The Supreme Court has recognized that a "close nexus [exists] between the freedoms of speech and assembly." *NAACP v. State of Alabama*, 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). In fact, there is a "vital relationship between freedom to associate and privacy in one's associations." *Id.* at 462, 78 S.Ct. 1163. The Court has also explained that the "[i]nviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs." *Id.*

The only real "option" that Haughton has under section 527(j) is whether to limit his free speech rights, or his rights of free association. Unless the amount of his contributions are limited in some manner, his identity will be disclosed.[13] It has been established that limitations on the amount of political contributions are, in effect, limitations on the amount of political speech.

challenges only the disclosure and penalty provisions of subsection (j). Even if he desired to raise a challenge against subsection (i), it is not clear upon what basis Haughton could establish standing to do so. Specifically, as a contributor, Haughton would suffer no injury in fact from a political organization having to comply with the registration requirements of subsection (i).

13. The government's contention that contributions could be "conditioned" on an organization's agreement not to disclose is unavailing. Such an arrangement, even if permissible or enforceable, would still result in a 35% loss of that contribution. Therefore, while the penalty is technically imposed upon the organization rather than Haughton himself, it operates as a *de facto* limitation on Haughton's contribution, and thus his speech.

*See Buckley,* 424 U.S. at 17–20, 96 S.Ct. 612. Therefore, the court finds at this time that plaintiff Haughton has satisfied the "injury in fact" requirement for standing, as the chilling effect on his First Amendment freedoms is "objectively reasonable." *See Pittman v. Cole,* 117 F.Supp.2d 1285, 1304, n. 44 (S.D.Ala.2000) (finding that "a chill of First Amendment rights resulting in self-censorship is in itself the exact type of injury that gives standing to challenge a state action." (citations and quotations omitted)).

The second and third requirements for standing are also present. There is a clear connection between the harm that Haughton might suffer and the disclosure requirements of subsection (j), and a ruling in favor of the plaintiffs would certainly redress (or prevent) any such injury. *See Lujan,* 504 U.S. at 560–61, 112 S.Ct. 2130.

Plaintiff Freeman Jockisch, at the time of the initiation of this action, was running for reelection as the Mobile, Alabama County Commissioner for District 2. He basically asserts that as a result of the registration requirements of subsection (i),[14] he and his campaign staff were forced to spend considerable amounts of time doing paperwork; time that otherwise would have been spent on typical campaign activities. The government contends that this does not constitute adequate "injury in fact," and additionally that subsection (i)'s requirements are imposed upon Jockisch's committee rather than himself directly. The plaintiffs argue that according to Alabama law, Jockisch's campaign committee was established "primarily to benefit an individual candidate or an individual elected official," in this case, Jockisch. *See* Ala.Code § 17–22A–2(a)(11)(2000). Therefore, the plaintiffs argue that any injury to

the campaign committee would constitute an injury to Jockisch the candidate.

■■■ After careful review, the court finds that Jockisch does not meet the constitutional requirements for standing as set forth above. Jockisch has alleged a harm that he has suffered, the inconvenience of having to comply with the registration requirements of subsection (i). However, he has not asserted that he has suffered "an invasion of a legally protected interest" *Lujan,* 504 U.S. at 560–61, 112 S.Ct. 2130. The court is not aware of a right to unfettered campaigning that is enjoyed by political candidates.[15] There are a wide variety of administrative and ministerial tasks that are part of running a political campaign. The simple fact that some time had to be spent by Jockisch or his committee staff in order to comply with subsection (i) does not constitute adequate injury in fact.

Additionally, the court finds that Jockisch cannot satisfy the requirements for prudential third party standing on behalf of his committee. The Eleventh Circuit has explained that:

> We have recognized the right of litigants to bring actions on behalf of third parties, provided three important criteria are satisfied: the litigant must have suffered an "injury-in-fact," thus giving him or her a "sufficiently concrete interest" in the outcome of the issue in dispute; the litigant must have a close relation to the third party; and there must exist some hindrance to the third party's ability to protect his or her own interests.

*Harris v. Evans,* 20 F.3d 1118, 1122 (11th Cir.1994); *see also Singleton v. Wulff,* 428 U.S. 106, 114–17, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). Even assuming that Jockisch

---

**14.** As a "political committee of a state or local candidate," Jockisch's committee is excepted from the requirements of subsection (j) pursuant to § 527(j)(5)(B)

**15.** In fact, Jockisch states that subsection (i) requires him to make "redundant disclosures of the same information he provides to the state of Alabama." (Compl., at ¶ 58).

could satisfy the first two criterion, he has failed to show any impediment to his political committee protecting its own, and consequently his interests. Therefore, the court concludes that Jockisch lacks standing to challenge subsection (i).[16]

## IV. CONCLUSION

After careful consideration, the court concludes that subsection (j) of I.R.C. § 527 is a penalty rather than a tax, and therefore neither the Anti–Injunction Act nor the tax exception to the Declaratory Judgment Act will bar a challenge by the organizational plaintiffs.[17] Furthermore, individual plaintiff Haughton has standing to challenge subsection (j) and qualifies for the equitable exception contained in *South Carolina v. Regan* regardless of whether subsection (j) is a tax or a penalty. However, the court finds that subsection (i) is a

tax for purposes of the Anti–Injunction Act, and therefore the organizational plaintiffs are barred from challenging its constitutionality through the present action. However, the court finds that individual plaintiff Jockisch lacks standing to challenge subsection (i). Accordingly, the government's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), and Fed.R.Civ.P. 12(b)(6) is hereby **GRANTED** with respect to Jockisch's challenge of subsection (i), and **DENIED** with regard to the remaining plaintiffs' First Amendment claims against subsection (j).[18] Plaintiff Jockisch is hereby **DISMISSED** as a party in this case.

---

**16.** At any rate, even if Jockisch could somehow establish the requisite standing to challenge subsection (i), his action would be barred by the Anti–Injunction Act. *See Franchise Tax Board of California v. Alcan Aluminium Limited,* 493 U.S. 331, 339, 110 S.Ct. 661, 107 L.Ed.2d 696 (1990). In finding that the Tax Injunction Act, 28 U.S.C. § 1341, barred a suit by foreign corporations to challenge a tax imposed upon domestic corporations of which they were the sole shareholders, the Supreme Court declined to apply the *South Carolina v. Regan,* exception, stating that "[we] therefore construe the Tax Injunction Act as barring a federal action by a party who has under its direction and control an entity possessing a plain, speedy, and efficient remedy for the controlling party's claims." On the surface, it would appear that Jockisch could qualify for the *South Carolina v. Regan* exception, as he does not have an alternative remedy to challenge the tax. However, to allow Jockisch to avoid the AIA simply because he has chosen to challenge subsection (i) as an individual rather than having his committee (the entity to which subsection (i) actually applies) bring suit, would be contrary to both the AIA and the purpose of the *South Carolina* exception. *See also National Taxpayers Union, Inc. v. United States,* 68 F.3d 1428, 1436 (D.C.Cir.1995) (finding that an organization composed of taxpayers could not

assert the *South Carolina* exception, because the individual members of the organization themselves possessed an alternative remedy. Allowing parties to purposely circumvent the AIA in this manner would "elevate form over substance.") (citing and quoting *South Carolina v. Regan,* 465 U.S. at 381, n. 19, 104 S.Ct. 1107).

**17.** Because the court concludes that subsection (j) is a penalty, the court will not address whether the organizations would have associational standing under *NAACP v. Alabama,* 357 U.S. 449, 459, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), to challenge its constitutionality on behalf of their contributors.

**18.** Additionally, while the government, in its motion to dismiss, discussed plaintiffs' Fifth and Tenth Amendment claims somewhat cursorily, the plaintiffs wholly failed to address those claims in their response. Having determined that the parties have failed to adequately brief those claims, the court finds that the government's motion to dismiss shall be **DENIED** with respect to those claims. Having already concluded that the plaintiffs' First Amendment claim can proceed, the practical effect of foregoing a decision on the merits on the Fifth and Tenth Amendment claims, if any, is minimal.