[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 24, 2003
THOMAS K. KAHN
CLERK

————————————————

No. 02-16283

————————————————

D. C. Docket No. 00-00759-CV-RV-C

MOBILE REPUBLICAN ASSEMBLY,
NATIONAL FEDERATION OF REPUBLICAN
ASSEMBLIES, et al.,

Plaintiffs-Appellees,

versus

UNITED STATES OF AMERICA,
DAVID P. YORK, et al.,

Defendants-Appellants,

————————————————

Appeal from the United States District Court
for the Southern District of Alabama

————————————————

**(December 24, 2003)**

Before ANDERSON, BARKETT and RONEY, Circuit Judges.

BARKETT, Circuit Judge:

The United States appeals from a district court decision holding

unconstitutional section 527(j) of the Internal Revenue Code. This section

establishes strict disclosure requirements for any organization that declares itself a "political organization" under section 527(i) in order to exempt large portions of its campaign-related income from taxation. Because we believe that section 527(j) merely imposes conditions upon the receipt of a voluntary tax subsidy, we treat that section as part of the overall tax scheme, subject to the Anti-Injunction Act, 26 U.S.C. § 7421(a). We therefore vacate the decision of the district court.

Congress enacted 26 U.S.C. § 527 in 1975 in order to shield contributions to political organizations from taxation as income. See S. Rep. No. 93-1357 at 7501-03 (1974). Under this section, a political organization need not declare contributions, dues, or fund-raising proceeds as income if the organization uses this money for the "influencing or attempting to influence the selection, nomination or appointment of any individual to any Federal, State or local public office." 26 U.S.C. § 527(e)(2). As originally enacted, Section 527 did not contain separate disclosure requirements, apparently in large part because the Federal Election Campaign Act (FCA), 2 U.S.C. §§ 431 et seq., already established disclosure requirements for expenditures by "political committees."[1] The following year,

---

[1]As Senator Carl Levin later remarked,
At the time Congress established the [section 527] tax exemption, it assumed that such organizations would be filing with the FEC under the campaign finance laws for the obvious reason that the language for both coverage by the IRS and coverage by the FEC were the same–'influencing an election'. Consequently it was assumed that section 527 didn't need to require disclosure with the IRS, since the FEC disclosure was considerably more complete.

however, the Supreme Court construed "expenditures" under FCA to include only "express advocacy" that explicitly called for the election or defeat of a particular candidate within a specific election. Buckley v. Vale, 424 U.S. 1, 79-80 (1976). This ruling effectively eliminated disclosure requirements for anything other than express advocacy. See also 146 Cong. Rec. S5994 at S5995-96 (June 28, 2000) (statement of Sen. Lieberman) (describing successful attempts by section 527 organizations to evade disclosure as a result of this ruling).

In response to the spectacular increase in the use of section 527 organizations for tax-exempt political expenditures with limited public scrutiny, Congress added sections 527(i) and 527(j) in 2000. See Pub. L. 106-230, 114 Stat. 477 (July 1, 2000). Under section 527(i), an organization must give formal notice to the Secretary of the Treasury in order to receive tax-exempt treatment for campaign-related income. 26 U.S.C. § 527(i)(1). Under section 527(j), such an organization must disclose the name, address and occupation of each contributor who gives more than $200 in the aggregate, as well as the name and address of each recipient of more than $500 in aggregate expenditures. 26 U.S.C. § 527(j)(3).[2] If an organization that gives notice under section 527(i) fails to make

---

146 Cong. Rec. S6044 (June 29, 2000) (statement of Sen. Levin).

[2]Following the district court decision in this case, Congress amended 527(j) to require disclosure of expenditure purpose as well as the identity of the recipient. Congress also exempted organizations focused solely on state and local elections and subject to comparable

the required disclosures, it must pay the highest corporate tax rate on "the amount to which the failure relates." 26 U.S.C. § 527(j)(1).

Shortly after Congress enacted these provisions, numerous section 527 organizations, including Mobile Republican Assembly (the "organizational appellees"), and several individuals, including campaign contributor Paul Houghton (the "individual appellees"), filed this suit in federal district court seeking both a declaration that the provisions were unconstitutional and an injunction against their enforcement. In rejecting the government's motion to dismiss, the district court recognized that the Anti-Injunction Act[3] barred the action to the extent that it sought to enjoin the collection of a tax. Nat'l Fed'n of Republican Assemblies v. United States ("Republican Assemblies I"), 148 F. Supp. 2d 1273, 1278 (S.D. Ala. 2001). However, the court found that section 527(j) constituted a penalty rather than a tax, citing in part the lack of revenue-related purpose and the use of the word "penalty" within the subsection heading. Id. at 1278-80.

The court also treated the provision as a penalty rather than a tax when analyzing the substantive constitutional claims in an order granting partial

disclosure requirements under state law. See Pub. L. 107-276, 116 Stat. 1929 (Nov. 2, 2002).

[3]The Anti-Injunction Act provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a).

4

summary judgment to the appellees. Nat'l Fed'n of Republican Assemblies v. United States ("Republican Assemblies II") 218 F. Supp. 2d 1300, 1318-23 (S.D. Ala. 2002).[4] The court surmised that many section 527 organizations would refuse to disclose both contributions and expenditures. As a result, they would be subject to the highest corporate tax rate on the amount of money coming in as well as the amount of money going out. Thus, the financial consequences of failing to comply with the disclosure requirements might exceed the tax benefit obtained, making the assessment a "penalty" rather than a tax. Id. at 1318-21. We disagree with the court's characterization and hold that section 527(j) forms part of the overall tax scheme.

In Regan v. Taxation With Representation, 461 U.S. 540 (1983), the Supreme Court interpreted an analogous provision of the tax code, section 501(c)(3). That section grants a tax exemption (as well as a tax deduction for contributors) to certain non-profit organizations so long as they do not dedicate a "substantial portion" of their activities to the attempt to influence legislation. 26 U.S.C. § 501(c)(3). Taxation With Representation (TWR), a tax policy advocacy

---

[4]On the merits, the court weighed the intrusiveness of the disclosure requirements against the government's interests in increasing public information about candidates and deterring actual and perceived corruption. Applying strict scrutiny analysis, the court upheld the required disclosure of contributors but found that disclosure of expenditures violated the First Amendment. The court also found that required disclosure of expenditures violated the equal protection component of the Fifth Amendment Due Process Clause and the Tenth Amendment.

group, challenged the Internal Revenue Service's denial of its attempt to register under this provision, arguing that the prohibition against substantial lobbying violated both its First Amendment right to speak and its Fifth Amendment right to equal protection vis-a-vis other organizations.

The Supreme Court rejected these claims. The Court noted that tax exemptions were a "form of subsidy . . . administered through the tax system" and held that Congress had legitimately decided "not to subsidize lobbying as extensively as it chose to subsidize other activities that nonprofit organizations undertake to promote the public welfare." 461 U.S. at 544. Although TWR argued that the restriction on lobbying imposed an unconstitutional condition on the receipt of tax-deductible contributions, the Court treated the prohibition against lobbying as a legitimate, congressionally-mandated component of the voluntary tax exemption. That is, the Court analyzed the condition within the context of the overall tax scheme, rather than as a separate provision or penalty.

The Court observed that TWR remained free to receive tax-deductible contributions for non-lobbying activities and to engage in lobbying using other financial resources. Congress, however, was not obliged to provide a tax subsidy merely because the organization wished to use it for political speech: "Although TWR does not have as much money as it wants, and thus cannot exercise its

6

freedom of speech as much as it would like, the Constitution does not confer an entitlement to such funds as may be necessary to realize all the advantages of that freedom." Id. at 549. As a result, the Court upheld differential treatment of § 501(c)(3) organizations against both First and Fifth Amendment challenges.

We believe that section 527(j) falls squarely under Regan. Congress has enacted no barrier to the exercise of the appellees' constitutional rights. Rather, Congress has established certain requirements that must be followed in order to claim the benefit of a public tax subsidy. Any political organization uncomfortable with the disclosure of expenditures or contributions may simply decline to register under section 527(i) and avoid these requirements altogether. The fact that the organization might then engage in somewhat less speech because of stricter financial constraints does not create a constitutionally mandated right to the tax subsidy. Similarly, the fact that some self-declared section 527 organizations may later choose to withhold disclosure and, as a result, may pay more in taxes than they would have paid without tax-exempt status does not make the initial decision to register under section 527 any less voluntary. Rather, we consider the statutory scheme as a whole and treat the consequences of violating the conditions of the subsidy as part of the tax framework.

Because the section 527(j) disclosure requirements constitute conditions

7

attached to the receipt of a tax subsidy, we hold that penalties imposed for violating the conditions of that tax status should be considered as part of the tax for purposes of analysis under the Anti-Injunction Act.[5] As a result, we conclude that the Act bars the organizational appellees from seeking injunctive relief.[6] Instead, they must pursue relief within a suit for refund after the tax has been assessed and paid. See Enochs v. Williams Packing & Nav. Co., 370 U.S. 1, 7 (1962).

The appellees assert that third parties such as individual contributor Paul

---

[5]In its denial of the government's Rule 12(b)(6) motion to dismiss on Anti-Injunction Act grounds, the district court concluded that the disclosure requirements did not serve a discernible revenue purpose and thus fell under the line of cases allowing suits against penalties imposed through the tax code. Republican Assemblies I, 148 F. Supp. 2d at 1278. However, those cases involve tax penalties imposed for substantive violations of laws not directly related to the tax code. See Lipke v. Lederer, 259 U.S. 557, 561-62 (1922) (allowing a suit against penalties imposed for violating the Prohibition Act); Regal Drug Corp. v. Wardell, 260 U.S. 386, 391-92 (1922) (same). In Bob Jones University v. Simon, 416 U.S. 725 (1974), the Supreme Court rejected the argument that the Anti-Injunction Act did not apply whenever adverse revenue consequences were imposed for non-tax purposes. In that case, the university challenged an IRS decision to rescind its § 501(c)(3) tax status because of its discriminatory admission policies. The Court held that the Anti-Injunction Act barred the suit:

> Petitioner further contends that the Service's actions do not represent an effort to protect the revenues but an attempt to regulate the admissions policies of private universities. Under this line of argument, the Anti-Injunction Act is said to be inapplicable because the case does not truly involve taxes. We disagree. The Service bases its present position with regard to the tax status of segregative private schools on its interpretation of the Code. There is no evidence that that position does not represent a good-faith effort to enforce the technical requirements of the tax laws, and, without indicating a view as to whether the Service's interpretation is correct, we cannot say that its position has no legal basis or is unrelated to the protection of the revenues. The Act is therefore applicable.

Id. at 739-40. Similarly, in this case, the IRS bases its position squarely upon the explicit language of the Internal Revenue Code, and the disclosure conditions form part of the overall tax subsidy scheme.

[6]Because the federal tax exception to the Declaratory Judgment Act is at least as broad as the prohibition of the Anti-Injunction Act, our holding also forecloses the appellees from seeking declaratory relief. See Alexander v. "Americans United," Inc., 416 U.S. 752, 758 n.10 (1974).

8

Haughton may not challenge the tax in a refund suit because they do not pay any taxes under section 527 and thus may not initiate a suit for refund. Therefore, they contend, Haughton falls under the exception to the Anti-Injunction Act described in South Carolina v. Regan, 465 U.S. 367 (1984). In that case, the Supreme Court held that "Congress did not intend the Act to apply to actions brought by aggrieved parties for whom it has not provided an alternative remedy." Id. at 378. Even if Haughton might be eligible for the South Carolina exception, however, his claims primarily involve the disclosure of his identity as a contributor. Complaint at para. 61-62. The district court upheld the constitutionality of contributor disclosure, and that portion of its ruling is not on appeal here.[7]

**VACATED AND REMANDED WITH INSTRUCTIONS TO DISMISS FOR LACK OF JURISDICTION**.

---

[7]The appellees note that the district court also found section 527(j) unconstitutional with respect to contributions under its Tenth Amendment analysis. See Mobile Republican II, 218 F. Supp. 2d at 1352. However, this analysis rested on the finding that section 527(j) "is not a revenue measure and does not serve any revenue purpose." Id. Our analysis above disposes of this issue. Section 527(j) merely places conditions on private organizations who voluntarily seek a *federal* tax subsidy, something well within the taxing authority conferred upon Congress. We also note that the complaint does not allege that Haughton ever gave money to state political organizations, making his connection to this claim highly tenuous. See Complaint at para. 19, 61-62. In addition, Congress has now exempted many purely state-level organizations from section 527(j) disclosure requirements. See Pub. L. 107-276, 116 Stat. 1929 (Nov. 2, 2002).

9