DIANA GRIBBON MOTZ, Circuit Judge:
Liberty University and certain individuals brought this suit to enjoin, as unconstitutional, enforcement of two provisions of the recently-enacted Patient Protection and Affordable Care Act. The challenged provisions amend the Internal Revenue Code by adding: (1) a “penalty” payable to the Secretary of the Treasury by an individual taxpayer who fails to maintain adequate health insurance coverage and (2) an “assessable payment” payable to the Secretary of the Treasury by a “large employer” if at least one of its employees receives a tax credit or government subsidy to offset payments for certain health-related expenses. The district court upheld these provisions, ruling that both withstood constitutional challenge. Because this suit constitutes a pre-enforcement action seeking to restrain the assessment of a tax, the Anti-Injunction Act strips us of jurisdiction. Accordingly, we must vacate the *398 judgment of the district court and remand the case with instructions to dismiss for lack of jurisdiction.
I.
A.
On March 23, 2010, the President signed into law the Affordable Care Act, a comprehensive bill spanning 900 pages, which institutes numerous changes to the financing of health care in the United States. See Pub.L. No. 111-148. Liberty and some individuals (collectively “plaintiffs”) challenge only two provisions of the Act.
1.
The first amends the Internal Revenue Code (sometimes “the Code”) by adding § 5000A (“the individual mandate”).[1] See id., § 1501(b). The individual mandate requires an “applicable individual” to “ensure” that beginning after 2013, the individual “is covered under minimum essential coverage.” I.R.C. § 5000A(a). The individual mandate lists a number of health insurance programs that qualify for “minimum essential coverage”: government- and employer-sponsored plans, individual market plans, and other health plans recognized as adequate. § '5000A(f)(l). If an individual “taxpayer” fails to obtain the required coverage, the “taxpayer” is subject to a “penalty.” § 5000A(b)(l).
The Affordable Care Act uses the Intern.1 Revenue Code’s existing tax collection system to implement the penalty. Only a “taxpayer” is subject to the penalty, id., and the Code defines a “taxpayer” as “any person subject to any internal revenue tax.” Id. § 7701(a)(14). A taxpayer must include the penalty payment with his regularly-filed income tax return. § 5000A(b)(2). The taxpayer owes the penalty only if he fails to maintain minimum coverage for a continuous period of three months or longer. § 5000A(e)(4)(A). The individual mandate also makes a taxpayer liable for a penalty imposed on his “dependent,” as defined in § 152 of the Code. § 5000A(b)(3)(A). Akin to the joint liability of spouses for income taxes, I.R.C. § 6013(d)(3), a taxpayer is also jointly liable for a spouse’s penalty if filing a joint income tax return. § 5000A(b)(3)(B).
A taxpayer subject to the penalty owes the greater of: (1) a “flat dollar amount” equal to $95 for the taxable year beginning 2014, $325 for 2015, $695 for 2016, and $695 indexed to inflation for every year thereafter; or (2) a graduated percentage (1% in 2014, 2% in 2015, and 2.5% every year thereafter) of the amount by which the “taxpayer’s household income,” as defined by the Code, exceeds “gross income specified in” I.R.C. § 6012(a)(1) (the amount of income triggering the requirement to file a tax return). See § 5000A(c)(2), (3). But the penalty may not exceed the cost of the “national average premium for qualified health plans” of a certain level of coverage. § 5000A(c)(l).
Section 5000A(g)(l) authorizes the Secretary of the Treasury (“the Secretary”) to assess and collect the penalty “in the same manner as an assessable penalty under subchapter B of chapter 68” of the Intern.1 Revenue Code, which in turn contains penalties that the Secretary is to “assess! ] and collect!] in the same manner as taxes.” Id. § 6671(a). Accordingly, the Affordable Care Act provides the Secretary with all the civil enforcement tools of the Internal Revenue Code subject to only one *399 express limitation: the Secretary may not seek collection of the penalty by “fil[ing] [a] notice of lien with respect to any property” or “levying] on [a taxpayer’s] property.” § 5000A(g)(2)(B).
2.
The other provision of the Act challenged by plaintiffs amends the Internal Revenue Code by adding § 4980H (the “employer mandate”). Pub.L. No. Ill— 148, § 1513. That provision imposes an “assessable payment” on “any applicable large employer” if a health exchange notifies the employer that at least one “full-time employee” obtains an “applicable premium tax credit or cost-sharing reduction.” I.R.C. § 4980H(a), (b). An “applicable premium tax credit or cost-sharing reduction” consists of either (1) a tax credit to assist a low-income individual with financing premiums for qualified health plans or (2) a government subsidy to help finance an individual’s share of out-of-pocket health care costs, as provided by the Affordable Care Act. § 4980H(c)(3).
Section 4980H calculates the assessable payment differently depending on whether the employer offers adequate health insurance coverage to its employees. If the employer fails to offer adequate coverage to its full-time employees, the “assessable payment” is calculated by multiplying $2,000 (increased yearly by the rate of inflation), by the number of total full-time employees, prorated over the number of months an employer is liable. § 4980H(a), (c)(1), (c)(5). If, however, the employer does offer adequate insurance coverage, the “assessable payment” is calculated by multiplying $3,000 by the number of employees receiving the “applicable premium tax credit or cost-sharing reduction,” prorated on a monthly basis and subject to a cap. § 4980H(b)(l), (2).
A large employer must pay these assessments “upon notice and demand by the Secretary.” § 4980H(d)(l). The Secretary has the authority to assess and collect the exaction in the “same manner as an assessable penalty” provided by subchapter B of Chapter 68 of the Code. Id.
B.
On March 23, 2010, the day the President signed the Affordable Care Act into law, plaintiffs filed this action to enjoin the Secretary and other government officials from enforcing the Act. In their complaint, plaintiffs allege the following facts.
One of the individual plaintiffs, Michele G. Waddell, asserts that she “has made a personal choice not to purchase health insurance coverage” and does not want to do so in the future. Waddell maintains that she pays for needed health care services as she uses them. Another individual plaintiff, Joanne V. Merrill, asserts that she too has “elected not to purchase health insurance coverage” and does not want to do so. Both Waddell and Merrill contend that the individual mandate requires them “to either pay for health insurance coverage” or “face significant penalties.”
They seek to enjoin the Secretary from assessing or collecting the exaction prescribed for failure to comply with the individual mandate. Waddell and Merrill assert that, “as part of his oversight of the Internal Revenue Service,” the Secretary has the “power to collect” the penalties “as part of an individuales] income tax return.” They describe the individual mandate as imposing a “penalty in the form of a tax ... on any taxpayer” who fails to maintain minimum essential coverage. They further allege that the “Taxing and Spending Clause ... only grants Congress the power to impose taxes upon certain purchases, not to impose taxes upon citizens who choose not to purchase some *400 thing such as health insurance.” Similarly, Waddell and Merrill repeatedly assert that the individual mandate assesses “a direct tax that is not apportioned according to Census data or other population-based measurement,” in violation of Congress’s Taxing Power. Accordingly, they ask to be “free from improper taxation [that] is likely to cause significant financial hardships.” They also contend that the individual mandate exceeds Congress’s authority under the Commerce Clause of the Constitution.
Liberty, a private Christian university located in Lynchburg, Virginia, challenges the “employer mandate” as a tax that will impose “tax penalties” on it because it has employees who will likely receive a tax credit or cost-sharing reduction. Liberty alleges that these “significant penalties” will cause it to suffer “substantial financial hardship.” According to Liberty, the employer mandate constitutes an “unapportioned direct tax upon employers in violation of’ the Constitution, and “[i]mposition of the tax infringes upon Liberty University’s rights to be free from improper taxation.” Liberty also asserts that the employer mandate exceeds Congress’s authority under the Commerce Clause.
For relief, plaintiffs ask for an injunction restraining all defendants, including the Secretary of the Treasury, from “acting in any manner to implement, enforce, or otherwise act under the authority” of the Affordable Care Act. They seek a declaration that the Act is unconstitutional and assert that they have no “adequate remedy at law to correct” the continuing constitutional violation.
Before the district court, the Secretary moved to dismiss the case, contending inter alia that the federal tax Anti-Injunction Act (AIA), I.R.C. § 7421(a), barred the district court from reaching the merits because the challenged penalty is to “be assessed and collected” in the same manner as a tax and other penalties to which the AIA clearly applies. The court rejected this argument, holding that Congress did not intend to “convert the[se] penalties into taxes for purposes of the Anti-Injunction Act.” The court reasoned that (1) Congress did not specifically extend the term “tax” in the AIA to include the challenged exactions; and (2) the exactions did not qualify as a “tax” for purposes of the AIA because they “function as regulatory penalties.” After rejecting the AIA argument and the Secretary’s other jurisdictional contentions, the district court concluded that the challenged exactions are “valid exercise[s] of federal power under the Commerce Clause” and dismissed the complaint for failure to state a claim upon which relief can be granted.
Plaintiffs then filed this appeal, asserting that the district court erred as a matter of law in upholding the Affordable Care Act. The Secretary argued to the contrary, specifically declining to attack the district court’s “threshold determination[ ]” as to “the applicability of the Anti-Injunction Act.” The Secretary did, however, maintain that Congress’s Taxing Power under Article I, § 8, cl. 1 of the Constitution authorized the exactions imposed by the challenged mandates because those mandates “operate as taxes.” Because the Secretary’s contention as to the constitutionality of the mandates under the Taxing Power suggested that the AIA bar might apply to this suit, we ordered the parties to file supplemental briefs to address the applicability of the AIA. In these briefs, both the Secretary and plaintiffs contend that the AIA does not bar this action. We disagree.
We initially explain why we believe that the plain language of the AIA bars our consideration of this challenge. We then *401 address the parties’ contrary arguments: first those offered by the Secretary (and largely adopted by the dissent), then those advanced by plaintiffs.
II.
A.
We note at the outset the inescapable fact that federal courts are courts of limited jurisdiction. They possess “only that power authorized by Constitution and statute, which is not to be expanded by judicial decree.” See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (internal citations omitted). Accordingly, a federal court has an “independent obligation” to investigate the limits of its subject-matter jurisdiction. See Arbaugh v. Y & H Corp., 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006). This is so even when the parties “either overlook or elect not to press” the issue, Henderson v. Shinseki — U.S. —, 131 S.Ct. 1197, 1202, 179 L.Ed.2d 159 (2011), or attempt to consent to a court’s jurisdiction, see Sosna v. Iowa, 419 U.S. 393, 398, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). Our obligation to examine our subject-matter jurisdiction is triggered whenever that jurisdiction is “fairly in doubt.” Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1945, 173 L.Ed.2d 868 (2009).
As part of the Internal Revenue Code, the AIA provides that “no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person.” I.R.C. § 7421(a).[2] The parties concede, as they must, that, when applicable, the AIA divests federal courts of subject-matter jurisdiction. The Supreme Court has explicitly so held. See Enochs v. Williams Packing & Navigation Co., 370 U.S. 1, 5, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962).
By its terms the AIA bars suits seeking to restrain the assessment or collection of a tax. Thus, the AIA forbids only pre-enforcement actions brought before the Secretary of the Treasury or his delegee, the Internal Revenue Service (IRS), has assessed or collected an exaction. A taxpayer can always pay an assessment, seek a refund directly from the IRS, and then bring a refund action in federal court. See United States v. Clint-wood Elkhom Mining Co., 553 U.S. 1, 4-5, 128 S.Ct. 1511, 170 L.Ed.2d 392 (2008).
The parties recognize that plaintiffs here have brought a pre-enforcement action. Moreover, although Congress has provided numerous express exceptions to the AIA bar, see I.R.C. § 7421(a), the parties do not claim that any of these exceptions applies here. Resolution of the case at hand therefore turns on whether plaintiffs’ suit seeks to restrain the assessment or collection of “any tax.”
B.
A “tax, in the general understanding of the term,” is simply “an exaction for the support of the government.” United States v. Butler, 297 U.S. 1, 61, 56 S.Ct. 312, 80 L.Ed. 477 (1936). An exaction qualifies as a tax even when the exaction raises “obviously negligible” revenue and furthers a revenue purpose “secondary” to the primary goal of regulation. United *402 States v. Sanchez, 340 U.S. 42, 44, 71 S.Ct. 108, 95 L.Ed. 47 (1950); see also Bob Jones, 416 U.S. at 741 n. 12, 94 S.Ct. 2038. Thus, the term “tax” can describe a wide variety of exactions. See Trailer Marine Transp. Corp. v. Rivera Vazquez, 977 F.2d 1, 5 (1st Cir.1992) (surveying cases that have regularly “applied the label ‘tax’ ” to a “range of exactions,” even those that “might not be commonly described as taxes”).
The Supreme Court has concluded that the AIA uses the term “tax” in its broadest possible sense. This is so because the AIA aims to ensure “prompt collection of ... lawful revenue” by preventing taxpayers from inundating tax collectors with pre-enforcement lawsuits over “disputed sums.” Williams Packing, 370 U.S. at 7-8, 82 S.Ct. 1125. Thus, an exaction constitutes a “tax” for purposes of the AIA so long as the method prescribed for its assessment conforms to the process of tax enforcement. See Snyder v. Marks, 109 U.S. 189, 192, 3 S.Ct. 157, 27 L.Ed. 901 (1883) (defining a “tax” in the AIA as any exaction “in a condition [of being] collected as a tax”). Specifically, the AIA prohibits a pre-enforcement challenge to any “exaction [that] is made under color of their offices by revenue officers charged with the general authority to assess and collect the revenue.” Phillips v. CIR, 283 U.S. 589, 596, 51 S.Ct. 608, 75 L.Ed. 1289 (1931) (citing Snyder, 109 U.S. at 192, 3 S.Ct. 157); see also Bob Jones, 416 U.S. at 740, 94 S.Ct. 2038 (applying the AIA bar when IRS action is authorized by “requirements of the [Internal Revenue Code]”).
The Supreme Court has steadfastly adhered to this broad construction, notably in holding that the AIA bars pre-enforcement challenges to exactions that do not constitute “taxes” under the Constitution. Compare Bailey v. George, 259 U.S. 16, 42 S.Ct. 419, 66 L.Ed. 816 (1922) with Bailey v. Drexel Furniture Co., 259 U.S. 20, 42 S.Ct. 449, 66 L.Ed. 817 (1922). In Bailey v. Drexel Furniture, a refund action, the Court held unconstitutional as beyond Congress’s Taxing Power a “so-called tax,” finding it was in truth “a mere penalty, with the characteristics of regulation and punishment.” 259 U.S. at 38, 42 S.Ct. 449. Yet the Court held the very same provision a “tax” for purposes of the AIA and so dismissed a pre-enforcement challenge to the exaction. See Bailey v. George, 259 U.S. at 20, 42 S.Ct. 419. In recent years, the Court has expressly affirmed these holdings, reiterating that the term “tax” in the AIA encompasses penalties that function as mere “regulatory measure[s] beyond the taxing power of Congress” and Article I of the Constitution. Bob Jones, 416 U.S. at 740, 94 S.Ct. 2038.
The Court’s broad interpretation of the AIA to bar interference with the assessment of any exaction imposed by the Code entirely accords with, and indeed seems to be mandated by, other provisions of the Internal Revenue Code. The AIA does not use the term “tax” in a vacuum; rather, it protects from judicial interference the “assessment ... of any tax.” I.R.C. § 7421(a) (emphasis added). The Secretary’s authority to make such an “assessment ... of any tax” derives directly from another provision in the Code, which charges the Secretary with making “assessments of all taxes (including interest, additional amounts, additions to the tax, and assessable penalties) imposed by this title.” § 6201(a) (emphases added); see also § 6202 (“assessment of any internal revenue tax” includes assessment of “penalties”). Thus, for purposes of the very assessment authority that the AIA protects, Congress made clear that “penalties” (as well as “interest, additional amounts, [and] additions to the tax”) count as “taxes.” Congress must have intended the term “tax” in the AIA to refer to this same *403 broad range of exactions. See Erlenbaugh v. United States, 409 U.S. 239, 243, 93 S.Ct. 477, 34 L.Ed.2d 446 (1972) (“[A] legislative body generally uses a particular word with a consistent meaning in a given context.”).
In sum, the AIA forbids actions that seek to restrain the Secretary from exercising his statutory authority to assess ex-actions imposed by the Internal Revenue Code. See, e.g., Bob Jones, 416 U.S. at 740, 94 S.Ct. 2038 (holding AIA barred suit challenging IRS regulatory action when action was authorized by “requirements of the [Internal Revenue Code]”); Mobile Republican Assembly v. United States, 353 F.3d 1357, 1362 & n. 5 (11th Cir.2003) (holding AIA barred suits challenging “penalties imposed” for violating disclosure conditions of tax-exempt status); In re Leckie Smokeless Coal Co., 99 F.3d 573, 583 & n. 12 (4th Cir.1996) (holding AIA applied to “premiums” assessed and collected by the Secretary under color of the Internal Revenue Code); cf. Fed. Energy Admin. v. Algonquin SNG, Inc., 426 U.S. 548, 558 n. 9, 96 S.Ct. 2295, 49 L.Ed.2d 49 (1976) (holding AIA did not bar challenge to “fees” because fees not “assessed under” the Internal Revenue Code). The exaction imposed for failure to comply with the individual mandate constitutes a “tax[]” as defined in the Code’s assessment provisions. See I.R.C. §§ 6201(a), 6202, 5000A(g)(l). For these reasons, the AIA bars this action.[3]
III.
The Secretary’s contrary contention primarily relies on the fact that the individual mandate labels the imposed exaction a “penalty,” not a “tax.” § 5000A(b). For the Secretary, the Sixth Circuit, see Thomas More Law Center v. Obama, 651 F.3d 529 (6th Cir.2011), and now our friend in dissent, this “penalty” label renders the AIA inapplicable.
A.
Indisputably, the AIA bars pre-enforcement challenges even when Congress has “exhibit[ed] its intent” that a challenged exaction function as a “penalty.” Compare Bailey v. Drexel, 259 U.S. at 38, 42 S.Ct. 449, with Bailey v. George, 259 U.S. at 20, 42 S.Ct. 419. The term “penalty” therefore describes a category of exaction to which the Supreme Court has already applied the AIA.[4] Given this his *404 tory, it seems inconceivable that Congress would intend to exclude an exaction from the AIA merely by describing it as a “penalty.”
To be sure, Congress called the penalty at issue in the Bailey cases a “tax.” That fact, however, only aids the Secretary if there is something talismanic about the label “penalty” that removes a challenged exaction from the scope of the AIA. The Secretary has cited no case even remotely supporting such a proposition. In fact, the Supreme Court has repeatedly instructed that congressional labels have little bearing on whether an exaction qualifies as a “tax” for statutory purposes. See, e.g., Helwig v. United States, 188 U.S. 605, 613, 23 S.Ct. 427, 47 L.Ed. 614 (1903) (holding “use of words” does not “change the nature and character of the enactment” in the context of the revenue laws);[5] see also United States v. Reorganized CF & I Fabricators of Utah, Inc., 518 U.S. 213, 220, 116 S.Ct. 2106, 135 L.Ed.2d 506 (1996) (requiring a court to look “behind the label placed on the exaction and rest[] its answer directly on the operation of the provision”); United States v. Sotelo, 436 U.S. 268, 275, 98 S.Ct. 1795, 56 L.Ed.2d 275 (1978) (holding exaction’s “penalty” label not dispositive, but its “essential character” controls, in determining whether exaction is a tax for bankruptcy purposes); United States v. New York, 315 U.S. 510, 515-16, 62 S.Ct. 712, 86 L.Ed. 998 (1942) (stressing that the term “tax” includes “any pecuniary burden laid upon individuals ... for the purpose of supporting the government, by whatever name it may be called” (internal quotation omitted and emphasis added)).
Indeed, the Court has specifically found an exaction’s label immaterial to the applicability of the AIA. See Lipke v. Lederer, 259 U.S. 557, 42 S.Ct. 549, 66 L.Ed. 1061 (1922). In Lipke, the Supreme Court held that the “mere use of [a] word” to describe a challenged exaction was “not enough to show” whether a “tax was laid.” Id. at 561, 42 S.Ct. 549. The Court concluded that one of the challenged exactions, although labeled a “tax,” functioned in reality to “suppress crime” and so fell outside the AIA bar. Id. Moreover, notwithstanding the “penalty” and “special penalty” labels of the other challenged exactions, neither the majority nor Justice Brandéis in dissent gave these labels any import in determining the applicability of the AIA. Compare id. at 561-62, 42 S.Ct. 549 with id. at 563-65, 42 S.Ct. 549 (Brandéis, J., dissenting).
In light of this history, it is not surprising that no federal appellate court, except the Sixth Circuit in Thomas More, has ever held that the label affixed to an exaction controls, or is even relevant to, the applicability of the AIA.[6] Nonetheless, the *405 Secretary and the dissent insist that the label of an exaction does control in determining if the AIA bar applies. We first address the Secretary’s argument on this point and then the dissent’s.
The Secretary acknowledges that when “passing on the constitutionality of a tax law,” a court places no weight on the “precise form of descriptive words” attached to the challenged exaction. Nelson v. Sears, Roebuck & Co., 312 U.S. 359, 363, 61 S.Ct. 586, 85 L.Ed. 888 (1941) (internal quotation omitted) (emphasis added). But citing the twin Bailey cases as authority, the Secretary contends that the opposite rule must apply for purposes of the AIA, i.e. that for purposes of the AIA, the “precise form of descriptive words” given an exaction becomes dispositive.
The Secretary’s reliance on the twin Bailey cases is mystifying. In fact, they provide no support for his position. In Bailey v. Drexel Furniture, 259 U.S. at 38, 42 S.Ct. 449, a refund action, the Court held that an exaction exceeded Congress’s constitutional taxing authority, while on the same day, in Bailey v. George, 259 U.S. at 16, 42 S.Ct. 419, it dismissed a preenforcement challenge to the same exaction, characterizing it as a “taxing statute” for purposes of the AIA. When dismissing the pre-enforcement action, the Court did not state or suggest that it classified the challenged statute as a “taxing statute” because Congress labeled it as such. Nor does it seem plausible that the Court implicitly relied on that label, given that it had never before and has never since found an exaction’s label controlling for statutory purposes. See, e.g., Reorganized CF & I, 518 U.S. at 220, 116 S.Ct. 2106; Sotelo, 436 U.S. at 275, 98 S.Ct. 1795; Lipke, 259 U.S. at 561, 42 S.Ct. 549; Helwig, 188 U.S. at 613, 23 S.Ct. 427. Rather, only one explanation of the twin Bailey cases coheres with the Court’s precedents: the term “tax” in the AIA reaches any exaction assessed by the Secretary pursuant to his authority under the Internal Revenue Code—even one that constitutes a “penalty” for constitutional purposes.
The dissent’s contention that the Supreme Court’s reliance on the statutory label in Bailey v. George is so “obvious” that it required no explanation by the Court strikes us as unsound. It seems doubtful that the Court departed from its normal practice of ignoring statutory labels without explaining why it was doing so. Instead, the more likely—and just as “straightforward”—explanation is that the Court described the exaction as a “taxing statute” because Congress had charged the tax collector with assessing the challenged exaction. See Snyder, 109 U.S. at 192, 3 S.Ct. 157.[7] Contrary to the dis *406 sent’s belief, this holding did not require the Court to perform any elaborate “functional analysis,” but rather to recognize simply that the challenged exaction formed part of the general revenue laws.
The dissent’s related contention—that our interpretation of Bailey v. George brings that case into conflict with Lipke, in which the Supreme Court held that the AIA did not bar a certain pre-enforcement challenge—also misses the mark. In Lipke, the Court faced a challenge to the Secretary’s assessment of an exaction imposed pursuant to the National Prohibition Act, a statute “primarily designed to define and suppress crime.” 259 U.S. at 561, 42 S.Ct. 549 (emphasis added). Congress had enacted the statute to “prohibit intoxicating beverages” and authorized the tax collector to enforce a “tax” against persons who in violation of this criminal statute illegally manufactured or sold liquor. 41 Stat. 318. The National Prohibition Act, however, did not authorize the collector to make an assessment under his general revenue authority; rather, it converted him into a federal prosecutor. Specifically, it (1) conferred upon the collector an array of prosecutorial powers, subject to the control of the Attorney General, and (2) predicated the enforcement of the challenged tax on proof of criminal guilt. 41 Stat. 305, 317-18. The Lipke Court held that the AIA did not bar a pre-enforcement challenge to this exaction because “guarantees of due process” required pre-enforcement review of “penalties for crime.” 259 U.S. at 562.
Lipke thus casts no doubt on our conclusion that the term “tax” in the AIA reaches any exaction imposed by the Code and assessed by the tax collector pursuant to his general revenue authority. Lipke held only that when Congress converts the tax assessment process into a vehicle for criminal prosecution, the Due Process Clause prohibits courts from applying the AIA. See United States v. One Ford Coupe Auto., 272 U.S. 321, 329, 47 S.Ct. 154, 71 L.Ed. 279 (1926) (characterizing Lipke as “merely” a “due process” case); see also Bob Jones, 416 U.S. at 743, 94 S.Ct. 2038 (describing Lipke as permitting pre-enforcement review of “tax statutes” that function as “adjuncts to the criminal law”); Lynn v. West, 134 F.3d 582, 594-95 (4th Cir.1998) (citing Lipke for proposition that courts possess jurisdiction to enjoin “a tax that is in reality a criminal penalty”). Of course, the individual mandate imposes no such criminal penalty, and thus presents no constitutional impediment to applying the AIA.
In sum, the Supreme Court has itself emphasized that Lipke creates only a narrow constitutional limitation, not applicable here, on the holding of the twin Bailey cases that the AIA reaches a broader range of exactions than does the term “tax” in the Constitution. See Bob Jones, 416 U.S. at 741 n. 12, 94 S.Ct. 2038 (citing Lipke and noting, in the context of the AIA, that the Court has since “abandoned” any distinction between “revenue-raising” taxes and “regulatory” penalties). Yet the theory propounded by the Secretary and the dissent—that a label transforms a constitutional “tax” into a “penalty” for AIA purposes—would yield an AIA that reaches fewer exactions than does the Constitution. As former Commissioners of the IRS noted in criticizing this argument, this is the “opposite of what the Supreme Court held” in the twin Bailey cases. See Brief for Mortimer Caplin & Sheldon Cohen as Amici Curiae Supporting Appellees *407 at 24, Seven-Sky v. Holder, No. 11-5047 (D.C.Cir. July 1, 2011). The Secretary all but acknowledges this fact, admitting that the Bailey cases show only the “converse” of the position that he now propounds. We cannot upend the Supreme Court’s settled framework for determining if an exaction is a tax for statutory purposes on the basis of a theory for which the Secretary musters only cases that hold the “converse.”
B.
Perhaps in recognition of the dearth of case law supporting their argument, the Secretary and the dissent rely heavily on an inference they draw from the structure of the Internal Revenue Code to support their position.
Section 6665(a)(2) provides the starting point for this inference; it states that “any reference in this title to ‘tax’ imposed by this title shall be deemed also to refer to the ... penalties provided by this chapter,” i.e. Chapter 68. See § 6665(a)(2) (emphasis added); see also § 6671(a) (redundantly stating the same for “penalties and liabilities provided by” subchapter B of Chapter 68). According to the Secretary and the dissent, § 6665(a)(2) necessarily implies that any “penalty” outside of Chapter 68 does not qualify as a “tax” for purposes of the Code. Because Congress codified the individual mandate in Chapter 48 of the Code (entitled “Miscellaneous Excise Taxes”) rather than Chapter 68 (entitled “Assessable Penalties”), the Secretary and the dissent urge us to infer that Congress did not intend the individual mandate to constitute a “tax” for purposes of the AIA.
The fundamental difficulty with this argument is that § 6665(a)(2) merely clarifies that the term “tax” encompasses the penalties contained in Chapter 68; it does not limit the term “tax” to only these penalties. Nor can we imply such an limitation, for courts must not “read the enumeration of one case to exclude another unless it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it.” Barnhart v. Peabody Coal Co., 537 U.S. 149, 168, 123 S.Ct. 748, 154 L.Ed.2d 653 (2003). There is no evidence that in enacting the clarifying language of § 6665(a)(2), Congress intended to exclude a “penalty” codified outside of Chapter 68 from also qualifying as a “tax.” See United States v. Sischo, 262 U.S. 165, 169, 43 S.Ct. 511, 67 L.Ed. 925 (1923) (holding no inference can be made to imply an exclusion when Congress enacts an “extension,” rather than “restriction,” of a term).
Furthermore, the suggestion that we infer from § 6665(a)(2) a categorical exclusion from the term “tax” of all non-Chapter 68 penalties violates Congress’s express instructions. In § 7806(b) of the Code, Congress has forbidden courts from deriving any “inference” or “implication” from the “location or grouping of any particular section or provision or portion of this title.” I.R.C. § 7806(b). The argument of the Secretary and the dissent demands that we draw precisely such a forbidden “inference,” for under their theory, the character of a penalty turns entirely on the Chapter in which it is “lo-cat[ed].”[8]
*408 Moreover, the Secretary’s newly-minted position that Congress has implicitly excluded any “penalty” codified outside of Chapter 68 from qualifying as a “tax” contradicts his previous interpretation of the AIA. In Mobile Republican Assembly, 353 F.3d 1357, the Secretary defended against a pre-enforcement challenge to an exaction imposed by I.R.C. § 527(j), for failure to comply with the conditions attached to tax-exempt status. The district court held the AIA inapplicable for precisely the reasons that the Secretary now espouses, i.e. because Congress had labeled the exaction a “penalty” and codified it outside of Chapter 68. See National Federation of Republican Assemblies v. United States, 148 F.Supp.2d 1273, 1280 (S.D.Ala.2001). But the Secretary appealed, insisting that the AIA did apply because the challenged “penalty” was to be “assessed and collected in the same manner as taxes.” Br. of Appellant at 32, Mobile Republican Assembly, 353 F.3d 1357 (Feb. 18, 2003) (No. 02-16283), 2003 WL 23469121. The Eleventh Circuit agreed and dismissed the suit because the exaction was based “squarely upon the explicit language of the Internal Revenue Code” and “form[ed] part of the overall tax subsidy scheme.” 353 F.3d at 1362 n. 5.
The Secretary fails to explain his change in position or even refer to the Eleventh Circuit’s holding that the AIA applies to “penalties” codified outside of Chapter 68. Instead, the Secretary’s argument boils down to his intuition, accepted by the Sixth Circuit and the dissent, that “Congress said one thing in sections 6665(a)(2) and 6671(a), and something else in section 5000A [the individual mandate], and we should respect the difference.” Thomas More, 651 F.3d at 540.
But we can easily “respect the difference” in congressional wording without holding plaintiffs’ challenge exempt from the AIA bar. The legislative history of § 6665(a)(2) makes clear that Congress inserted that provision in the course of reorganizing and codifying the revenue laws in 1954, and did so merely to declare explicitly what had been implicit—that the term “tax” for purposes of the Code also refers to “penalties” imposed by the Code. See H.R.Rep. No. 83-1337, at A420 (1954), 1954 U.S.C.C.A.N. 4017 (noting that predecessor to § 6665(a)(2) “conforms to the rules under existing law” and “containfs] no material changes to existing law”); S.Rep. No. 83-1622, at 595-96 (1954), 1954 U.S.C.C.A.N. 4621 (same).[9] Given this history, we cannot interpret § 6665(a)(2) as working any substantive change to the Code; rather, it simply “mak[es] explicit what” was already “implied” by the Code. Sischo, 262 U.S. at 169, 43 S.Ct. 511; see also Walters v. Nat’l Ass’n of Radiation Survivors, 473 U.S. 305, 317-18, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985). That Congress did not repeat this clarifying language when it enacted the individual mandate, which is not part of any reorganization or reeodifieation of the Code, demonstrates nothing.[10]
*409 Rather, Congress well knew that the Code had for decades expressly provided that for purposes of the Secretary’s assessment power, the term “tax” “includes] ... penalties.” I.R.C. § 6201(a). Specific direction that the term “tax” in the AIA encompass the individual mandate “penalty” was therefore unnecessary. Cf. Bob Jones, 416 U.S. at 741-42, 94 S.Ct. 2038 (noting that Congress intended AIA to adapt to evolving “complexity of federal tax system”). Put another way, § 6201 specifically provides the Secretary with authority to make “assessments of all taxes (including ... penalties),” and the AIA specifically bars judicial interference with the Secretary’s power to make “assessment ... of any tax.” Given that Congress has not provided to the contrary, these two provisions taken together mandate the conclusion that the AIA bars this suit seeking to “restrain” an “assessment” of the exaction challenged here, regardless of the exaction’s label.
The Secretary’s contrary “label” argument not only fails to persuade, it also requires a strained interpretation of the Code. The Secretary urges us to take the view that Congress intended the individual mandate to constitute the only exaction imposed by the lengthy Internal Revenue Code that does not qualify as a “tax.”[11] The consequences of this counterintuitive argument extend well beyond the AIA. For example, accepting the Secretary’s contention that the label “penalty” exempts the individual mandate from provisions applicable to “taxes” would inexplicably eliminate a host of procedural safeguards against abusive tax collection. See, e.g., §§ 7217(a) (prohibiting executive branch officials from requesting IRS officials to “conduct or terminate an audit ... with respect to the tax liability” of any particular taxpayer), 7433(a) (providing civil damages for unauthorized “collection of Federal tax”), 7435 (providing civil damages for unauthorized enticement of disclosure concerning the “collection of any tax”). We will not presume that Congress intended such an anomalous result, and we certainly cannot infer this intent on the basis of a mere label.
C.
The Secretary’s remaining contentions, some of which are adopted by the dissent, are brief and unsupported by any statute or case law. All are policy arguments, relying on the Secretary’s view of what the 2010 Congress, in enacting the individual mandate, assertedly “would regard” as “makfing] sense,” or “would not have wanted,” or as the dissent would have it, what the 2010 Congress “intended.” According to the Secretary and the dissent, these policy concerns demonstrate that the 2010 Congress could not have wanted the AIA to bar pre-enforcement challenges to the individual mandate.
The most fundamental difficulty with this contention is its focus on the “intent” of the 2010 Congress in enacting the indi *410 vidual mandate. Our task is not to divine the intent of the 2010 Congress but simply to determine whether the term “tax” in the AIA encompasses the exaction challenged here. To resolve this question, we must look to the text of the AIA and the intent of the Congresses that enacted and reenacted that statute, just as the Supreme Court has done in its AIA cases. See, e.g., South Carolina v. Regan, 465 U.S. 367, 375, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1984); Bob Jones, 416 U.S. at 741-42, 94 S.Ct. 2038; Snyder, 109 U.S. at 191, 3 S.Ct. 157.
Once we conclude that the term “tax” in the AIA does encompass a challenged exaction, we can go no further. For the terms of the AIA declare that courts, save for specific statutory exceptions, not applicable here, may entertain “no suit for the purpose of restraining the assessment or collection of any tax.” 26 U.S.C. § 7421(a) (emphasis added). This expansive language leaves no room for a court to carve out exceptions based on the policy ramifications of a particular pre-enforcement challenge. The Supreme Court said as much in Bob Jones, repudiating its old cases that had embraced a “departure from the literal reading of the Act” based on “exceptional circumstances.” 416 U.S. at 743, 94 S.Ct. 2038. In doing so, the Court instructed that courts must give the AIA “literal force, without regard to the ... nature of the pre-enforcement challenge.” Id. at 742, 94 S.Ct. 2038.
Of course, the 2010 Congress could have exempted the individual mandate from the AIA. But to date it has not provided for such an exemption, and surely we cannot hold it has implicitly done so. To infer an intent on the part of the 2010 Congress to exempt this pre-enforcement challenge from the otherwise-applicable AIA bar would be tantamount to finding an implicit repeal of that bar; such an approach would violate the “cardinal rule” that “repeals by implication are not favored.” TVA v. Hill, 437 U.S. 153, 189, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978) (applying the implicit “repeal” doctrine to the TVA’s argument that “the Act cannot reasonably be interpreted as applying to [the challenged] federal project”); see also United States v. United Continental Tuna Corp., 425 U.S. 164, 169, 96 S.Ct. 1319, 47 L.Ed.2d 653 (1976) (holding that courts must be “hesitant to infer that Congress,” in enacting a later statute, “intended to authorize evasion of a [prior] statute”). Given that the terms of the AIA encompass the exaction imposed by § 5000A(b), the “only permissible justification” for exempting that exaction is if the individual mandate is “irreconcilable” with the AIA. Hill, 437 U.S. at 189, 98 S.Ct. 2279. Obviously, it is not.
Accordingly, it is simply irrelevant what the 2010 Congress would have thought about the AIA; all that matters is whether the 2010 Congress imposed a tax. If it did, then the AIA bars pre-enforcement challenges to that tax. After all, were we to embrace the argument pressed by the Secretary and the dissent that the AIA applies only when a subsequent Congress has exhibited an intent for it to apply, we would impermissibly render the AIA little more than a non-binding suggestion to future Congresses, devoid of independent legal force. See Tuna Corp., 425 U.S. at 169, 96 S.Ct. 1319 (holding that courts must require explicit “expression by Congress” that it intends the “compromise or abandonment of previously articulated policies”). The Supreme Court has rejected this very view, holding that the AIA establishes a nearly irrebuttable presumption that no tax may be challenged in any preenforcement action. See Bob Jones, 416 U.S. at 743-46, 94 S.Ct. 2038.
Even taken on their own terms, however, the proffered policy arguments fail. Neither the Secretary nor the dissent has *411 identified any persuasive evidence that the 2010 Congress in fact intended to permit pre-enforcement challenges to the individual mandate.[12] The best evidence of what Congress intended, of course, is the legislation it actually enacted. See Carcieri v. Salazar, 555 U.S. 379, 129 S.Ct. 1058, 1066-67, 172 L.Ed.2d 791 (2009). Congress could have enacted an exemption from the AIA bar; it did so in other instances. See, e.g., I.R.C. §§ 4961(c)(1) (second-tier tax exempt from AIA), 6703(c)(1) (penalty exempt from AIA upon satisfying statutory conditions), 7421(a) (listing several exactions and procedures exempt from AIA). But Congress has provided so such exemption here. Alternatively, Congress could have crafted a specific route to pre-enforcement judicial review. See Sigmon Coal Co. v. Apfel, 226 F.3d 291, 301 (4th Cir.2000); see also Clinton v. City of New York, 524 U.S. 417, 428-29, 118 S.Ct. 2091, 141 L.Ed.2d 393 (1998). Again, it did not do so here. Thus, Congress knows how to exempt a specific exaction from the AIA bar, and that it did not do so here strongly undermines the contention that Congress intended such an exemption.
Nor do the Secretary’s policy arguments, which the dissent embraces, demonstrate that the AIA should not apply here. The Secretary contends that “it makes sense that Congress would regard it as unnecessary to apply the AIA bar” to the individual mandate because, in the mandate, Congress prohibited the Secretary from using his “principal tools” to “collect unpaid taxes.” Maybe so. But the Secretary’s argument ignores the fact that the AIA bars challenges seeking to restrain the “assessment or collection of any tax.” I.R.C. § 7421(a) (emphasis added). Congress’s intent to waive some of the Secretary’s collection tools does not in any way evidence that it would want to invite pre-enforcement challenges to the Secretary’s remaining collection powers or all of his assessment authority. And the Supreme Court has left no doubt that restraining even “one method of collection” triggers the AIA’s prohibition on injunctive suits. United States v. Am. Friends *412 Serv. Comm., 419 U.S. 7, 10, 95 S.Ct. 13, 42 L.Ed.2d 7 (1974).
Alternatively, the Secretary argues that because the individual mandate “is ‘integral’ to the [Affordable Care Act’s] guaranteed-issue and community-rating provisions” and has a “delayed ... effective date,” Congress would have “wanted” early resolution of challenges to it and “did not intend the AIA to prohibit pre-enforcement challenges.” This argument ignores that any holding that the AIA bar does not apply to the individual mandate might have serious long-term consequences for the Secretary’s revenue collection. The Congressional Budget Office projects that 34 million people will remain uninsured in 2014 and thus potentially subject to the challenged “penalty.” Letter from Douglas W. Elmendorf, CBO Director, to Hon. Harry Reid, Senate Majority Leader, at table 4 (Dec. 19, 2009). To exempt the individual mandate from the AIA would invite millions of taxpayers—each and every year—to refuse to pay the § 5000A(b) exaction and instead preemptively challenge the IRS’s assessment.
Moreover, some of those taxpayers will undoubtedly possess a host of non-constitutional, individual grounds upon which to challenge the assessment of the § 5000A(b) exaction. As former IRS Commissioners warned in a recent brief, allowing these suits would severely hamper IRS collection efforts. See Brief for Mortimer Caplin & Sheldon Cohen as Amici Curiae Supporting Appellees at 12-15, Seven-Sky v. Holder, No. 11-5047 (D.C.Cir. July 1, 2011). This would threaten to interrupt the IRS’s collection of $4 billion annually from the challenged exaction. See Letter from Elmendorf to Reid at table 4. Moreover, those challenges could impede the collection of other income taxes by preemptively resolving—in litigation over the exaction imposed by § 5000A(b)—issues basic to all tax collection, such as a taxpayer’s adjusted gross income.[13] See I.R.C. § 5000A(c)(2)(B); C.I.R. v. Sunnen, 333 U.S. 591, 597-98, 68 S.Ct. 715, 92 L.Ed. 898 (1948) (issue preclusion “applicable in the federal income tax field”).
Thus, while the Secretary and the dissent may be correct that we could resolve this one lawsuit with few adverse revenue consequences, the holding necessary to reach the merits here could, in the long-run, wreak havoc on the Secretary’s ability to collect revenue. If Congress is persuaded by the Secretary’s present litigation position, it can craft a specific AIA exception for constitutional challenges to the individual mandate. See I.R.C. § 7428(a) (inserting, after Bob Jones, an exemption for the exact sort of pre-enforcement challenge the Bob Jones Court had held barred by the AIA). Until it does so, however, we are bound by its directive that we entertain “no suit” restraining the assessment of “any tax.” § 7421(a).
IV.
Having dispensed with the Secretary’s arguments, we turn finally to the arguments pressed by plaintiffs.
A.
Plaintiffs initially contend that the AIA bar does not apply because this “case does not seek to restrain the assessment *413 or collection of a tax.” The plaintiff university in Bob Jones tendered precisely the same initial argument. Its “first” contention was that the AIA did not apply because its suit was not brought “for the purpose of restraining the assessment or collection of any tax.” 416 U.S. at 738, 94 S.Ct. 2038. The Supreme Court held that the university’s complaint “belie[d] [this] notion.” Id. So it is here. For, in their complaint, plaintiffs characterize the individual mandate as a “tax” and ask for a judicial invalidation of this “tax[ ] upon citizens who choose not to purchase something such as health insurance.” They assert that the individual mandate provision, although labeled a “penalty,” is a “tax” not apportioned as required by Article I of the Constitution, and a “tax” beyond the scope of congressional power under the Sixteenth Amendment of the Constitution. Thus, as in Bob Jones, plaintiffs’ complaint belies their initial contention.[14]
Plaintiffs’ remaining contention as to why the AIA does not bar their challenge to the individual mandate is that it imposes an unconstitutional regulatory penalty “not designed to raise revenue,” which assertedly violates the Commerce Clause, the Taxing and Spending Clause, and unspecified “other constitutional rights.” The problem with this argument is that a claim that an exaction is an unconstitutional regulatory penalty does not insulate a challenge to it from the AIA bar. Again, in Bob Jones, the Court confronted and rejected precisely this argument.
Like plaintiffs here, the university in Bob Jones asserted that the IRS’s “threatened action” would “violate [its constitutional] rights.” Id. at 736, 94 S.Ct. 2038 (asserting various First and Fourteenth Amendment rights). In fact, in its brief to the Supreme Court, the university made an argument identical to that here. The university maintained that “what the government would have the University do ... involves not revenue but rather unconstitutional compulsion,” Brief for Petitioner at 28, Bob Jones Univ. v. Simon, 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1973) (No. 72-1470), 1973 WL 172321. This mirrors the plaintiffs’ contention here that the mandate is “not designed to raise revenue” but instead to unconstitutionally “compel ]” specific behavior. Just as the Bob Jones Court held the university’s argument foreclosed by the twin Bailey cases, see 416 U.S. at 740-41, 94 S.Ct. 2038, we must hold plaintiffs’ identical argument foreclosed by those cases.
For in Bob Jones, the Supreme Court not only reaffirmed the twin Bailey cases as setting forth the proper course by which a taxpayer could challenge an exaction but also explained that it had “abandoned ... distinctions” between “regulatory and revenue-raising taxes.” Id. at 741 n. 12, 94 S.Ct. 2038. The Court held that the AIA bar applied even to an exaction *414 implementing a social policy unless a plaintiff could demonstrate that the IRS “has no legal basis” in the Code for assessing the exaction or seeks an objective “unrelated to the protection of the revenues.” Id. at 740, 94 S.Ct. 2038. Plaintiffs cannot and do not make any contention that the IRS has “no legal basis” in the Code for assessing the penalty in § 5000A or that this exaction is “unrelated to the protection of the revenues.”
In sum, we find plaintiffs’ argument that the AIA does not apply here wholly unpersuasive.
B.
Perhaps recognizing the weakness of their argument as to the inapplicability of the AIA, plaintiffs principally contend that a narrow judicially-created exception to the AIA permits pursuit of their action seeking a pre-enforcement injunction against enforcement of the individual mandate.
That exception allows a plaintiff to escape the AIA bar if he demonstrates that (1) equity jurisdiction otherwise exists, i.e. irreparable injury results if no injunction issues, and that (2) “it is clear that under no circumstances could the [Secretary] ultimately prevail.” Williams Packing, 370 U.S. at 7, 82 S.Ct. 1125.[15] When making the latter determination, a court must take “the most liberal view of the law and the facts” in favor of the Secretary. Id. It is difficult to see how any irreparable injury justifies the injunctive relief requested here. But even assuming equity jurisdiction does exist here, plaintiffs cannot meet the stringent standard of proving with certainty that the Secretary has “no chance of success on the merits.” Bob Jones, 416 U.S. at 745, 94 S.Ct. 2038.
In rejecting the university’s contention that it would prevail on the merits, the Bob Jones Court explained that the sole case in which a plaintiff had met this exacting standard was Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422 (1932). That case is a far cry from the case at hand. In Standard Nut, a tax collector attempted to assess a tax that federal courts had already held in a proper post-enforcement action did not apply to the plaintiffs product. Id. at 510, 52 S.Ct. 260. By contrast, to date, no court has even considered the validity of the individual mandate in a post-enforcement action, let alone held it invalid in such a proceeding. Moreover, in pre-enforcement actions, the courts of appeals have divided as to the constitutionality of the individual mandate. Compare Florida v. HHS, 648 F.3d 1235 (11th Cir.2011) (invalidating mandate) with Thomas More, 651 F.3d 529 (upholding mandate). Given this history and the presumption of constitutionality a federal court must afford every congressional enactment, see United States v. Morrison, 529 U.S. 598, 607, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000), we can hardly hold that the Secretary has “no chance of success on the merits.” Bob Jones, 416 U.S. at 745, 94 S.Ct. 2038.
V.
In closing, we recognize “that Congress has imposed” a potentially “harsh regime” on some taxpayers. Id. at 749, 94 S.Ct. 2038. However, as in Bob Jones, the *415 question of whether these concerns “merit consideration” is a matter for Congress to weigh. Id. at 750, 94 S.Ct. 2038. Unless and until Congress tells us otherwise, we must respect the AIA’s bar to the “intrusion of the injunctive power of the courts into the administration of the revenue.” Regan, 465 U.S. at 388, 104 S.Ct. 1107 (O’Connor, J., concurring).
For all these reasons, we vacate the judgment of the district court and remand the case to that court to dismiss for lack of subject-matter jurisdiction.

VACATED AND REMANDED

. The Affordable Care Act itself refers to the provision as the "Requirement to maintain minimum essential coverage.” Pub.L. No. 111-148, § 1501. Because plaintiffs refer to it as the individual mandate throughout their complaint and briefs, we often do so as well.

. The Declaratory Judgment Act authorizes a federal court to issue a declaratory judgment “except with respect to Federal taxes.” 28 U.S.C. § 2201(a). In Bob Jones Univ. v. Simon, 416 U.S. 725, 732 n. 7, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974), the Court held that "the federal tax exception to the Declaratory Judgment Act is at least as broad as the Anti-Injunction Act.” Accordingly, our holding as to the Anti-Injunction Act applies equally to plaintiffs' request for declaratory relief.

. Although both parties generally contend that the AIA does not bar this suit, neither offers any reason why the challenge to the employer mandate escapes the AIA bar. There is good reason for that. Because Congress placed the employer mandate in the Internal Revenue Code, triggering the Secretary's authority to assess and collect payment, all of the reasons set forth in the text as to why the AIA bars a pre-enforcement challenge to the individual mandate also apply to the employer mandate. We additionally note that Congress waived none of the Secretary’s collection tools in imposing the employer mandate and labeled the exaction a "tax” in certain subsections. See § 4980H(b)(2), (c)(7), (d)(1). Accordingly, the AIA clearly bars Liberty’s challenge to the employer mandate.

. This is not to elide the general distinction between taxes and penalties. We agree with the Sixth Circuit’s general observation that there are "contexts” in which "the law treats ‘taxes’ and ‘penalties’ as mutually exclusive.” Thomas More, 651 F.3d at 539 (citing one bankruptcy and two constitutional cases). The question here is whether the AIA is one of these "contexts.” Neither the Secretary nor the Sixth Circuit cites a single case suggesting that it is. The dissent relies on some bankruptcy cases in an attempt to import the distinction between a revenue-raising "tax” and a regulatory "penalty” from that context. To accept the dissent’s view would place us at odds with the Supreme Court’s explicit holding, in the context of the AIA, that the distinction between "regulatory and revenue-raising” exactions has been "abandoned.” Bob Jones, 416 U.S. at 741 & n. 12, 94 S.Ct. 2038.

. Helwig does not, as the dissent contends, support its view that an exaction’s label controls. The Court in Helwig acknowledged that Congress may expressly classify an exaction as a "penalty or in the nature of one, with reference to the further action of the officers of the government, or with reference to the distribution of the moneys thus paid, or with reference to its effect upon the individual,” and that “it is the duty of the court to be governed by such statutory direction.” 188 U.S. at 613, 23 S.Ct. 427 (emphasis added). The Court then identified statute after statute illustrating the various ways in which Congress has historically directed a "duty,” "additional duty,” or "penalty” to be treated "with reference to” a specified governmental action. Id. at 614-19, 23 S.Ct. 427. Congress has provided no such direction "with reference to” the AIA, and Helwig makes clear that a mere label describing an exaction does not constitute such direction. See id. at 613, 23 S.Ct. 427 (explaining that "describing” an exaction "as ‘a further sum’ or 'an additional duty’ will not work a statutory alteration of the nature of the imposition”).

. We certainly respect the views of the courts, trumpeted by the dissent, that have held the AIA inapplicable to suits like the one at hand. *405 We note, however, that even unanimity among the lower courts is not necessarily predictive of the views of the Supreme Court. See CBOCS West, Inc. v. Humphries, 553 U.S. 442, 472, 128 S.Ct. 1951, 170 L.Ed.2d 864 (2008) (Thomas, J., dissenting) (collecting cases where the Supreme Court has “reject[ed]” a "view uniformly held by the courts of appeals”).

. The dissent argues that the statement in Snyder, 109 U.S. at 192-93, 3 S.Ct. 157, that the term "tax” in the AIA refers to those exactions “claimed by the proper public officers to be a tax,” makes relevant the Secretary’s present litigation position that the AIA does not bar this lawsuit. The most fundamental problem with this argument is that the Secretary still does "claim” that the challenged exaction is a "tax,” albeit one authorized by the Constitution's Taxing Clause. See Appellee's Br. at 58. We cannot hold that the AIA does not apply to this "tax” merely because the Secretary has changed his stance on the AIA and now contends that the exaction is a tax only for constitutional purposes. To give the Secretary's lawyers such a veto over the AIA bar would abdicate our "independent obligation” to assure ourselves of our own jurisdiction. Arbaugh, 546 U.S. at 514, 126 *406 S.Ct. 1235. Moreover, Congress called the exaction in the employer mandate a "tax.” See 26 U.S.C. § 4980H(b)(2), (c)(7), (d)(1). The argument is for this reason, too, fatally flawed.

. Contrary to the dissent’s contention, this conclusion does not “reject the legal force” of § 6665(a)(2). When Congress expressly directs that the location of a provision matters, as it has in § 6665(a)(2), then a court need not infer anything and Congress’s direction controls. But to adopt the position of the Secretary and the dissent, a court would have to infer that an exaction is not to be treated as a tax from the exaction’s place in the Code (here Chapter 48 rather than Chapter 68). It is this inference that the Code forbids.

. Congress originally inserted the text of § 6665 as § 6659 of the 1954 Code, see Intern.1 Revenue Code of 1954, Pub.L. No. 83-289, § 6659(a)(2), 68A Stat. 1, 827 (1954), but relocated it to § 6665 in 1989 without making any changes to it, see Omnibus Reconciliation Act of 1989, Pub.L. No. 101-239, tit. VII, § 7721(a), (c)(2), 103 Stat. 2106, 2399 (1989) (codified at I.R.C. § 6665(a)).

. This does not mean that § 6665(a)(2), which includes Chapter 68 penalties within the term "tax” throughout the Code, serves no purpose. For example, § 6665(a)(2) may well be necessary to authorize a taxpayer to pursue a civil suit for the illegal "collection of Federal tax” against a collector who intentionally misinterprets the Code in collecting a Chapter 68 "penalty.” See I.R.C. § 7433(a); cf. Sylvester v. United States, 978 F.Supp. *409 1186, 1189 (E.D.Wis.1997); Le Premier Processors, Inc. v. United States, 775 F.Supp. 897, 902 n. 6 (E.D.La.1990).

. The Secretary yet again employs faulty reasoning to reach this remarkable conclusion. He contends that three other exactions labeled as penalties and codified outside Chapter 68—I.R.C. §§ 5114(c)(3), 5684(b), 5761(e)—constitute "taxes” for purposes of the AIA because they shall be "assessed, collected, and paid in the same manner as taxes, as provided in section 6665(a).” But the only meaningful difference between these provisions and the individual mandate is the addition of the phrase, “as provided in section 6665(a),” which refers only to the previous clause and does not incorporate the separate, unreferenced parts of § 6665(a).

. The Secretary offers only congressional floor statements as evidence of this supposed congressional intent. In those statements, two Senators contemplated a potential onslaught of challenges to the individual mandate but, as the Secretary puts it, "never suggested that the only way for an individual to obtain review would be ... [through] a refund action.” The Supreme Court has long held that such statements are of little assistance in ascertaining congressional intent. See, e.g., Grove City College v. Bell, 465 U.S. 555, 567, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984). Moreover, the floor statements relied on here are irrelevant, because at most they signal an acknowledgment of potential lawsuits, not an endorsement of challenges seeking pre-enforcement injunctive relicf.
The dissent goes even a step further than the Secretary, inferring an AIA exception because drafts of what became the Affordable Care Act had previously called the challenged exaction a "tax.” The Supreme Court has warned against such an approach, cautioning courts not to read much into Congress’s unexplained decision to change wording in a final bill. See Trailmobile Co. v. Whirls, 331 U.S. 40, 61, 67 S.Ct. 982, 91 L.Ed. 1328 (1947) (noting that the "interpretation of statutes cannot safely be made to rest upon mute intermediate legislative maneuvers”). Moreover, the dissent errs in suggesting that our holding "ignores” this wording change; rather, we simply hold that change irrelevant to the AIA bar. Congress's decision to call the challenged exaction a "penalty” may affect its treatment under sections of the Code that expressly distinguish “taxes” from "penalties,” e.g. those pertaining to the timing of interest accrual. See Latterman v. United States, 872 F.2d 564, 569-70 (3d Cir. 1989). Or Congress’s wording change may have simply carried political benefits. See Florida v. HHS, 716 F.Supp.2d 1120, 1142-43 (N.D.Fla. 2010). No evidence, however, indicates that the change was intended to exempt the individual mandate from the AIA.

. Other issues raised by the individual mandate that are common to many taxes include certain deductions from income taxes (§ 5000A(c)(4)(C)(i)), child dependency determinations (§ 5000A(b)(3)(A)), joint liability for spouses (§ 5000A(b)(3)(B)), the income level triggering a taxpayer’s duty to file a return (§ 5000A(c)(2)(B)), and family size for deduction purposes (§ 5000A(c)(4)(A)).

. Moreover, Bob Jones forecloses an argument that the AIA allows a challenge to the requirement that an individual maintain insurance, i.e. § 5000A(a), separate from a challenge to the penalty for noncompliance with this requirement, i.e. § 5000A(b). Some district courts have accepted this argument. See, e.g., Goudy-Bachman v. U.S. Dep't of Health & Human Servs., 764 F.Supp.2d 684, 695 (M.D.Pa.2011); Thomas More Law Center v. Obama, 720 F.Supp.2d 882, 891 (E.D.Mich. 2010). But invalidation of the individual mandate would necessarily preclude the Secretary from exercising his statutory authority to assess the accompanying penalty. Moreover, in Bob Jones, the Court held that the AIA barred a challenge to the IRS's interpretation of I.R.C. § 501(c)(3), even though that provision itself did not impose any tax; only when coupled with § 501(a) (making a 501(c)(3) organization exempt from income taxes) did tax consequences result. 416 U.S. at 738, 94 S.Ct. 2038.

. The Court has carved out one other exception to the AIA for "aggrieved parties for whom [Congress] has not provided an alternative remedy.” See Regan, 465 U.S. at 378, 104 S.Ct. 1107. That exception clearly does not assist plaintiffs because, as the Secretary concedes, they may challenge the individual mandate in a refund action. See Bob Jones, 416 U.S. at 746, 94 S.Ct. 2038.